PAUL, REICH & MYERS, P.C.
By:    Robert E. Paul, Esquire
Identification No. 21252
1608 Walnut Street, Suite 500                    Attorney for Plaintiff
Philadelphia, PA 19103
(215) 735-9200

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEONA V. RHOADES, Executrix of the Estate of DEWEY T. RHOADES, deceased, and widow in her own right | :CIVIL ACTION : : : |
| vs. | :NO. 16-CV-5844 : |
| ALLEN-BRADLEY COMPANY, et al. | :ASBESTOS CASE |

## MOTION FOR LEAVE TO SUBMIT SUPPLEMENTAL CASE LAW ON BARE METAL DEFENSE AND LOSS OF CONSORTIUM

1.      Pending before the Court are motions for summary judgment by various

defendants in this case where the surviving widow is 73 years old.

2.      Part of the issue on these motions is the assertion that while defendants may have

designed their equipment to contain asbestos the so-called bare metal defense bars the claim.

3.      While this matter has been pending a number of cases have been decided on the

issue by a number of courts including as recently as March 3, 2022 in *Gehant v. Foster Wheeler*,

2022 US Dist Lexis 38111 (EDVA 2022).

4.      Plaintiff seeks to bring these cases to the attention of the court for its

consideration in this matter.

5.      Plaintiff also wishes to review cases on whether loss of consortium can be

recovered and what items of damages can be recovered in the case besides pain and suffering of

Dewey.

PAUL, REICH & MYERS, P.C.

BY: _____
ROBERT E. PAUL

PAUL, REICH & MYERS, P.C.
By:    Robert E. Paul, Esquire
Identification No. 21252
1608 Walnut Street, Suite 500                                  Attorney for Plaintiff
Philadelphia, PA 19103
(215) 735-9200

---

## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

---

| | |
|---|---|
| LEONA V. RHOADES, Executrix of the Estate of DEWEY T. RHOADES, deceased, and widow in her own right | :CIVIL ACTION<br>:<br>:<br>: |
| vs. | :NO. 16-CV-5844<br>: |
| ALLEN-BRADLEY COMPANY, et al. | :ASBESTOS CASE |

---

## **MEMORANDUM OF LAW**

### I.      **Collection of Cases on Bare Metal Defense**

Pending before the Court are a number of summary judgment motions.  One of the issues

on these motions is the interpretation of the decision of the United States Supreme Court in *Air &*

*Liquid Systems v. DeVries*, ___ US ___ 139 Sct 986 (2019).  In that case the Supreme Court held

that a defendant who designs its product to contain asbestos can be held liable even if it did not

supply the asbestos that caused the injury under certain circumstances.  These are that the

defendant knew the product contained a dangerous element (i.e. asbestos), the defendant knew

the element was dangerous, and the defendant knew the asbestos-exposed worker would not

know of the danger.[1]

---

[1] The Pennsylvania state courts where this case was originally filed long ago adopted this view.  See *Burbage v. Boiler Engineering & Supply*, 433 PA 319 9219 A.2d 563 (1989) and *Walton v. Avco*, 530 PA 568, 610 A.2d 454 (1992).  Walton is close to the facts here as it involved an engine which malfunctioned causing a helicopter to crash when the engine

A number of cases have interpreted the *DeVries* case and the applicability of bare metal defense.  While none are binding they are of interest.

## EASTERN DISTRICT CASES

1.      In *Fend* Judge Brodie denied the motion of an engine manufacturer in this case. Pratt & Whitney (Exhibit A) and granted the motion of General Electric due to lack of proof of exposure to General Electric engines (Exhibit B).  Fend involved an aircraft mechanic on several of the same air planes as Rhoades.

2.      In *Boesenhofer* Judge Quinones denied the motions of John Crane, Crane (for valves), Electrolux (for soot blowers), Foster Wheeler (for boiler), Westinghouse (for turbines), GE (for turbines), Cleaver-Brooks (boilers), Warren Pumps (for pumps) (Exhibit C) rejecting the bare metal defense and granting others on proof of exposure grounds only while rejecting the bare metal defense.  Boesenhofer was a Philadelphia Navy Yard worker.

3.      In *DeVries* Judge Robreno denied the motions of Warren, Buffalo and Foster Wheeler (Exhibit D) on bare metal and granting CBS/Westinghouse's motion on the bare metal defense (Exhibit E).

4.      In *Rogers* Judge Schmehl denied the motions of Aurora Pump and Copes Vulcan (Exhibit F) and granted motions of Westinghouse, GE and others on bare metal or exposure or both.

4.      In *Sullivan* 18-CV-3622 Judge Robreno granted motions of Westinghouse and GE (and others) on the bare metal defense.

---

manufacturer warned the helicopter manufacturer of the danger and defect.  The helicopter manufacturer did nothing to warn and both helicopter and engine manufacturers were held liable.

**NON EASTERN DISTRICT CASES**

1.      In *Sebright v. GE* 525 F.Supp.3d 217 (D.Mass 2021), the Judge denied GE's bare metal defense motion.

2.      In *Gehant v. Foster Wheeler*, 2022 US Dist Lexis 38111 (EDVA 2022), Court denied Foster Wheeler's motion citing bare metal defense.

3.      In *Hammell* 2020 US Dist Lexis 159038 (DNJ 2020) Court denied CBS and Foster Wheeler's motions on bare metal defense.

4.      In *Cox v. Carrier* 2-21 IS Dist Lexis 155632 (DDel 2021) Court denied the motion of Foster Wheeler on bare metal defense.

5.      In *Spurlin v. Air & Liquid* 537 F.Supp.3d 1162 (SDCa 2021) Court denied the motions of Clark, Crane, Foster Wheeler, IMO, Tate Andale, Warren on bare metal defense.

6.      In *Dennis v. Air & Liquid* 2021 US Dist Lexis 182133 (CDCal 2021), the Court denied the bare metal defense of Crane and Foster Wheeler.

Since so many judges have come to contradictory results on the same evidence this suggests a jury question exists.

      **II.    As the Case Does Not Arise Under the Jones Act or the Death on the High Seas the Bar to Loss of Consortium Claims Does not Apply and/or Plaintiff Can Recover Pecuniary Aspects of Loss of Consortium Claim**

The case was initially filed in the State Courts of Pennsylvania on state law causes of action in strict liability and negligence.  It was not based on the Jones Act as decedent was not a Jones Act "seaman" suing his employer, the sole cause of action or possible defendant under the Jones Act.  It was not based on the Death on the High Seas Act.  The case was removed to This Court on an alleged federal defense, the so-called government specifications defense to the state

law claims.  Removal did not transform the case into one under the Jones Act or the Death on the

High Seas Act while it did bring the case under Maritime jurisdiction.  Even so maritime

jurisdiction saves to plaintiff all other remedies to which she is otherwise entitled 28 U.S.C.

1333(1).

There have been numerous cases in the US Supreme Court on the issue of recoverability

of loss of consortium in Jones Act or Death on the High Seas Act cases.  All have barred loss of

consortium claims because the Jones Act and the Death on the High Seas both bar loss of

consortium in haec verba.  But what if Congress did not provide the measure of damages in this

case which Congress did not do here?  There are no US Supreme Court cases on recovery of loss

of consortium by US Navy sailors, barred by the *Feres* doctrine from suing the Navy or the

government but who are not Jones Act seamen or Death on the High Seas Act claimant.

*Dutra Group v. Batterton,* 139 Sct 2275, 204 Led.2 692 (2019), provides as follows:

> "...Thus, where Congress has not prescribed specific rules Federal Courts must
> develop the Amalgam of traditional common law rules, modifications of these
> rules and newly created rules that forms the general maritime law, citing *East
> River SS Co. V. Transamerica DeLaval,* 476 US 858, Dutra at 2278..."

The Dutra Court went on to quote from *Miles v. Apex Marine Corp.,* 498 US 1927 (1990)

that Courts should look primarily to legislative enactments for policy guidance.  Miles relied on

*Mobil Oil Corp v. Higginbotham,* 436 US 618, 6225 (2010) and *Michigan Central Railroad v.

Vreeland,* 227 US 59, 69-71.  Both of these cases rely on the specific statutory language of the

Death on the High Seas Act 46 USC 30302 (*Higginbotham)* or the Jones Act/FELA 46 US 30104

(*Vreeland*) which bar loss of consortium[2].  In contradiction are cases such as *Norfolk*

---

[2] The Jones Act 46 USCC 30104 tracks the FELA for railroad workers.

*Shipbuilding & Drydock v. Garris*, 532 US 811 (2009) and *Yamaha Motor Corp USA v. Calhoun*, 516 US 199 (1996).  These cases read *Miles* as holding that when Congress has prescribed a comprehensive tort recovery regime there is no cause for enlargement of damages statutorily provided.  However, where Congress has not spoken *Yamaha and Garris* held that the Courts were free to expand damages beyond the traditional remedies.  Further, Congress provided in the maritime jurisdiction statute that all other remedies were preserved unless the case arose under the Jones Act or Death on the High Seas Act.

Based on this reading of the law Courts have permitted non-pecuniary damages including loss of consortium.  See *Dennis v. air & Liquid Systems*, 2020 US Dist Lexis 259 135 (USDCCDCal 2020), *Coulborn v. Crane,* 728 Fed Appx 679, 681-82 (9th Cir 2018), *Willis v. Buffalo Pumps*, 34 F.Supp.3d 1117 (SDCal 2014), *Lannes v. CBS*, 2013 WL 12125425 (CDCal 2013).  *Morgan v. Almars Out Boards Inc,* 316 F.Supp. 3rd 828 (D.Del 2018)[3].  Also See *Stevens v. Foster Wheeler*, 2019 WL 8577465 (USDCRI 2019), *Sheppard v. Air Liquid*, 2015 WL 5703799 (USDCRI), *Bray v. Ingersoll*, 2015 WL 728 515 (D.Conn. 2015).

*McCallister v. McDermott*, 2020 U.S. Dist. Lexis 146892 (MD LA 2020) and *Bell v. Foster Wheeler*, 2017 US Dist. Lexis 31119 (ED LA 2017) while ruling that only pecuniary damages could be recovered held that loss of support and loss of household services, which are ordinarily part of loss of consortium are in fact pecuniary damages, relying on *Neal v. Barisich,* 707 F.Supp 862, aff'd 889 F.2d 273 (5th Cir 1989).  Also see *Complaint of Patton-Tully Transportation Co.,* 797 F.2d 606 (5th Cir 1986).  Decedent's pain and suffering are pecuniary

---

[3] While decided in Delaware, the Judge who decided this case was Judge McHugh of our Court sitting by designation in Delaware.

damages under *Bell* supra and In re *Denet Towing Service,* 1999 US Dist Lexis 8058 (ED LA 1999) and thus recoverable.  Other courts, as discussed above, have held that if plaintiff is not pressing a Jones Act or Death on High Seas Act claim loss of consortium can be recovered.  See *Morgan v. Almars Outboards*, 316 F.Supp.3d 828 (D.Del. 2018) and the other cases cited above.

Wherefore, plaintiff should be allowed to submit additional cases on the bare metal defense and the arguments on pecuniary damages in wrongful death.

PAUL, REICH & MYERS, P.C.

BY: _____

ROBERT E. PAUL

8

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEONA V. RHOADES, Executrix of the Estate of DEWEY T. RHOADES, deceased, and widow in her own right | :CIVIL ACTION : : : |
| vs. | :NO. 16-CV-5844 : |
| ALLEN-BRADLEY COMPANY, et al. | :ASBESTOS CASE |

## ORDER

**AND NOW**, to wit, this _____ day of _____, 2022, plaintiff is given

leave to submit additional cases on the bare metal defense and pecuniary damages in wrongful

death claims not subject to the Jones Act or the Death on the High Seas Act.

BY THE COURT:

_____ J.

## CERTIFICATE OF SERVICE

The undersigned certify that a true and correct copy of the within Plaintiff's Motion to submit Supplemental Case Law on Bare Metal Defense and Loss of Consortium has been filed electronically. This document is available for viewing and downloading from the ECF system and was served upon all counsel of record.

_Robert E. Paul_

Robert E. Paul

Date: June _23_, 2022

EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JANE FEND, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | No.  17-1701 |
| | : | |
| v. | : | |
| | : | |
| ALLEN-BRADLEY COMPANY et al., | : | |
| | : | |
| Defendants. | | |

## EXPLANATION AND ORDER

Plaintiff Jane Fend ("Plaintiff") brings this negligence and strict liability lawsuit alleging that her husband Brian Fend ("Fend") died from lung cancer caused by exposure to various defendants' asbestos-containing products. Raytheon Technologies Company ("RTC") manufactured asbestos-containing airplane engines to which Fend was allegedly exposed during his service in the Navy as an aviation structural mechanic on board the USS John F. Kennedy.[1] I exercise jurisdiction pursuant to 28 U.S.C. § 1332.

RTC moves for summary judgment, arguing that Plaintiff's suit is barred by the statute of limitations, Plaintiff has failed to show causation, and RTC is entitled to government contractor immunity and derivative sovereign immunity.

### A.  Choice of Law and Statute of Limitations

As a threshold matter, the parties dispute whether maritime law or Pennsylvania law applies to Fend's USS Kennedy exposures. "[I]f the case sounds in admiralty, it would be

---

[1] Though Plaintiff references exposures at Naval Air Station ("NAS") Bermuda in her First Amended Complaint (ECF No. 213) and Answer to RTC's Motion for Summary Judgment (ECF No. 350), she does not point to any evidence in the record demonstrating that Fend was exposed to RTC products at NAS Bermuda. Rather, Plaintiff's evidence only relates to exposures to RTC products on the USS Kennedy. *See* Pl.'s Ex. A (deposition of John A. Ericksen, who served aboard the USS Kennedy with Fend); Pl.'s Ex. F (deposition of Neil E. Nelson, who served aboard the USS Kennedy with Fend). Thus, I will only discuss the USS Kennedy exposures.

inappropriate to apply . . . any . . . state's law, instead of federal admiralty law." *Gibbs v. Carnival Cruise Lines*, 314 F.3d 125, 131 (3d Cir. 2002). As such, "the initial step in the choice of law analysis is to determine whether [the] case sounds in admiralty" such that maritime law applies. *Id.* (internal quotation marks omitted). For maritime law to apply, the claim must satisfy (1) the locality test and (2) the connection test. *Conner v. Alfa Laval, Inc.*, 799 F. Supp. 2d 455, 462–63 (E.D. Pa. 2011) (Robreno, J.).

Plaintiff's claims satisfy both tests.

Claims meet the locality test when the relevant injury "occur[s] on navigable waters or, for injuries suffered on land, . . . the injury [is] caused by a vessel on navigable waters." *Id.* Here, the injury "occur[ed] on navigable waters" because the alleged asbestos exposure occurred aboard a ship while it was at sea. *See id.*

Claims meet the connection test when (a) the type of incident involved has a "potentially disruptive impact on maritime commerce," and (b) "'the general character' of the 'activity giving rise to the incident' shows a 'substantial relationship to traditional maritime activity.'" *Id.* "When a worker whose claims meet the locality test was primarily sea-based during the asbestos exposure, those claims will meet the connection test necessary for the application of maritime law." *Robertson v. Carrier Corp.*, No. 2:09-64068-ER, 2012 WL 2989174, at *1 n.1 (E.D. Pa. June 25, 2012) (Robreno, J.) (citing *Conner*, 799 F. Supp. 2d at 467–69)).

Here, the connection test is also satisfied. As to the first prong, the "general features of the type of incident involved" can be characterized as "exposure to allegedly defective products on or around Navy ships." *Conner*, 799 F. Supp. 2d at 467–68. This type of incident "plainly ha[s] a potentially disruptive impact on maritime commerce" because "exposure to defective products creates unsafe working conditions . . . could cause labor shortages on the ships [and]

disrupt the Navy's ability to protect other commercial ships at sea . . . ." *Id.* (internal citations and footnotes omitted). And as to the second prong, the general character of RTC's activity can be characterized as the "manufacture of products for use on vessels"—specifically, "the manufacture of products for use on Navy vessels." *Conner*, 799 F. Supp. 2d at 469; *Nelson v. Air & Liquid Sys. Corp.*, No. C14-0162JLR, 2014 WL 6982476, at *9 (W.D. Wash. Dec. 9, 2014). Alternatively, RTC's activity can be characterized as the manufacture and design of a "defective product . . . [that] is appurtenant to the vessel, even if [the product] was not specifically designed for use at sea." *Celebrity Cruises, Inc. v. Essef Corp.*, 101 F. Supp. 2d 204, 206, 209–10 (S.D.N.Y. 2000). Under either characterization, the "general character" of RTC's activity bears a "substantial relationship to traditional maritime activity." *Conner*, 799 F. Supp. 2d at 469; *Essef*, 101 F. Supp. 2d at 209–10; *accord, e.g., Quirin v. Lorillard Tobacco Co.*, 17 F. Supp. 3d 760, 767 (N.D. Ill. 2014) ("[I]f an allegedly defective product was produced for use on a naval vessel, an ensuing tort inflicted on a sea-based service member working on that vessel is governed by maritime law."). Thus, Plaintiff's claims satisfy the second prong of the connection test.

Because Plaintiff's claims meet the locality and connection tests, maritime law applies and RTC's first substantive argument—that it is entitled to summary judgment because the Pennsylvania two-year statute of limitations bars the suit—merits no further consideration.[2]

**B. Causation**

RTC also contends that Plaintiff has failed to show causation. To demonstrate causation for an asbestos claim under maritime law, Plaintiff must show that (1) the decedent "was exposed to the [asbestos-containing product] product"; (2) "the product was a substantial

---

[2] The statute of limitations for maritime wrongful death actions is three years. 46 U.S.C. § 30106. Plaintiff's action is timely because this case was removed on March 17, 2017 and Fend's date of diagnosis was March 17, 2014. Def. Ex. D. at 221:22–25.

factor in causing the injury he suffered," and (3) "the defendant manufactured or distributed

the asbestos-containing product to which exposure is alleged." *Conner v. Alfa Laval, Inc.*, 842 F.

Supp. 2d 791, 797 (E.D. Pa. 2012) (Robreno, J.) (citing *Lindstrom v. A-C Prod. Liab. Trust*, 424

F.3d 488, 492 (6th Cir. 2005)).

RTC does not dispute that its unincorporated division Pratt & Whitney manufactured

certain aircraft engines on board the USS Kennedy. Instead, RTC argues that there is no

evidence that Fend worked with or around asbestos-containing Pratt & Whitney engines or that,

if such work did occur, there is no evidence that it was a substantial factor in causing his lung

cancer.

Plaintiff has produced sufficient evidence as to causation to survive summary judgment.

During his time as aviation structural mechanic aboard the USS Kennedy, Fend worked on four

aircraft models powered by Pratt & Whitney engines during the relevant period: the F-14, A-6,

A-7, and EA-6B.[3] Ericksen Dep. at 31:3–9, 46:22–24, 64:8–16, 77:20–25. The Pratt & Whitney

J-52 and TF30 engines on all four aircraft incorporated asbestos-containing components,

including sealants and adhesives, heat shields, insulators, seals, gaskets, and clamps. Pl. Ex. B at

2–3, 5; Pl. Ex. C at 4, 7, 13–15, 20–21, 23, 33; Pl. Ex. D at 24–26, 28–30, 38, 40–42; Pl. Ex. L at

11, 20, 23, 54, 56. RTC contends that Plaintiff's failure to produce evidence that Fend worked

directly on these engines is sufficient to eliminate any dispute of material fact. Plaintiff counters

that, although Fend did not perform engine work on these aircraft, he performed structural repair

---

[3] Throughout her briefing, Plaintiff references Fend's work on various other aircraft, including the E-2, S-3, H-3, C-1, C-2, B-2, H-46, H-1, and 82C. Plaintiff, however, points to no evidence in the record that any of these planes contained parts manufactured or distributed by RTC. Plaintiff also requests that this Court reverse its prior ruling refusing to impute liability for Sikorsky helicopters to RTC. "Under the law-of-the-case doctrine, 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" ACLU v. Mukasey, 534 F.3d 181, 187 (3d Cir. 2008) (quoting Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 816 (1988)).

and maintenance work in some proximity to the engines.[4] Ericksen Dep. 31:20–25, 42:5–9,

47:6–21, 48:6, 64:17–20, 78:1–6, 172:10–19, 173:3–20, 178:7–21. As a reasonable juror could

conclude that this proximity is sufficient evidence to support Plaintiff's claims, RTC is not

entitled to summary judgment based on causation.

### C. Government contractor and derivative sovereign immunity defenses

Finally, RTC contends that it is entitled to summary judgment under government

contractor and derivative sovereign immunity defenses. "To satisfy the government contractor

defense, a defendant must show that (1) the United States approved reasonably precise

specifications for the product at issue; (2) the equipment conformed to those specifications; and

(3) it warned the United States about the dangers in the use of the equipment that were known to

it but not to the United States." *McCullom v. Allen-Bradley Co.*, No. 10-01742, 2012 WL

2832533, at *1 (E.D. Pa. Mar. 19, 2012) (citing *Boyle v. United Technologies Corp.*, 487 U.S.

500, 512 (1988)).

"[A]t the summary judgment stage, a defendant asserting the government contractor

defense has the burden of showing the absence of a genuine dispute as to any material fact

regarding whether it is entitled to the government contractor defense." *Various v. Various*, 856 F.

Supp. 2d 703, 710 (E.D. Pa. 2012) (Robreno, J.). "Ordinarily, because of the standard applied at

the summary judgment stage, defendants are not entitled to summary judgment pursuant to the

government contractor defense." *Id.*

---

[4] John Ericksen reports that, in a 9-month deployment, he saw Fend work on a F-14 fifty times, on an A-6 fifty times, on an A-7 fifty times, and on an EA-6B twenty times. Ericksen Dep. 59:15–19, 64:8–16, 78:17–23.

Here, the Court needs look no further than the first prong of *Boyle* to find material facts in dispute.[5] As facts relevant to RTC's discretion are in dispute, neither the government contractor defense nor the derivative summary judgment defense entitles RTC to summary judgment.[6]

------

For the above reasons, a reasonable jury could find for the Plaintiff and, as such, summary judgment is not warranted.

**AND NOW**, on this 22nd day of September, 2021, it is **ORDERED** that Defendant Raytheon Technologies Corporation's Motion For Summary Judgment (ECF No. 344) is **DENIED**.

s/ANITA B. BRODY, J.
ANITA B. BRODY, J.

COPIES **VIA ECF**

---

[5] At prong one, the parties provide countervailing evidence as to the precision of military specifications for both engine design and obligation to warn. Sumner Dec. ¶ 14–20; Pl. Ex. L at 26, 31, 38.

[6] A government contractor defendant cannot claim derivative sovereign immunity if it has any discretion as to product design. *See* Vangjeli v. Banks, No. CV 19-1635, 2020 WL 5880131, at *5 (E.D. Pa. Oct. 2, 2020) (Pratter, J.) ("[D]erivative sovereign immunity 'is limited to cases in which a contractor had no discretion in the design process and completely followed government specifications.'" (quoting Cabalce v. Thomas E. Blanchard & Assocs., Inc., 797 F.3d 720, 732 (9th Cir. 2015))).

EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JANE FEND,                                    :
                                              :        CIVIL ACTION
                Plaintiff,                    :        No. 17-1701
                                              :
        v.                                    :
                                              :
ALLEN-BRADLEY COMPANY, et al.,                :
                                              :
                Defendants.                   :

### EXPLANATION AND ORDER

Plaintiff Jane Fend brings this negligence and strict liability suit alleging that her husband Brian Fend died from lung cancer caused by exposure to various Defendants' asbestos-containing products. General Electric Company ("GE") manufactured asbestos-containing aircraft engines to which Fend was allegedly exposed during his service in the Navy. I exercise jurisdiction pursuant to 28 U.S.C. § 1332.

GE now moves for summary judgment (ECF No. 348). For the reasons stated below, I will grant GE's motion for summary judgment.

### I.      BACKGROUND

Brian Fend ("Fend") served his country from 1981 to 1996 as a naval aviation structural mechanic. Compl. ¶ 6. From 1981 to 1986, Fend performed structural maintenance and repairs on airplanes and helicopters aboard an aircraft carrier, the USS John F. Kennedy. Am. Compl. ¶ 10. These aircraft and their engines incorporated asbestos-containing components. Am. Compl. ¶ 10.

1

In March 2014, Fend was diagnosed with lung cancer. Pl. Ex. A at 3. He passed away ten short months later at the age of 53, leaving behind his wife, Plaintiff Jane Fend ("Plaintiff"), and two children. Am. Compl. ¶¶ 4–5. In March 2017, Plaintiff filed the instant suit, alleging that exposure to asbestos aboard the USS Kennedy caused Fend's lung cancer and naming as Defendants various manufacturers of aircraft and aircraft engines. *See generally* Compl.; Am. Compl. GE manufactured and supplied engines incorporated in certain aircraft aboard the USS Kennedy during the relevant period. Am. Compl. ¶¶ 10, 13.

GE now moves for summary judgment, asserting that Plaintiff has not proven causation or failure to warn, and claiming immunity from liability under the government contractor defense. Def. Br. 1.

## II.     DISCUSSION

GE argues in part that it is entitled to summary judgment based on causation. Def. Br. 2. GE alleges that Plaintiff has failed to prove that Fend was exposed to asbestos-containing GE engines or that any such exposure was a substantial factor in causing his injury. Def. Br. 2–3. GE cites to the record in asserting that, although Fend may have worked on structural components of the GE-powered S-3, any such work happened in a mechanics' shop and not in the aircraft hangar—that is, not on the aircraft itself, and never on any components that were part of or adjacent to the engines. Def. Br. 3.

Plaintiffs bringing products liability suits under maritime law must establish causation for both negligence and strict liability claims.[1] *Conner v. Alfa Laval, Inc.*, 842 F. Supp. 2d 791, 797 (E.D. Pa. 2012) (Robreno, J.) (citing *Lindstrom v. A-C Prod. Liab. Trust*, 424 F.3d 488, 492 (6th Cir. 2005)). To establish causation for asbestos claims under maritime law, a plaintiff must show

---

[1] Plaintiff and Defendant GE agree that maritime law applies and thus waive choice-of-law. *See* Williams v. BASF Catalysts LLC, 765 F.3d 306, 316 (3d Cir. 2014) ("[P]arties may waive choice-of-law issues.").

that (1) the decedent "was exposed to the [asbestos-containing] product"; (2) "the product was a substantial factor in causing the injury he suffered," and (3) the defendant "manufactured or distributed the asbestos-containing product to which exposure is alleged." *Id.*; *Abbay v. Armstrong Int'l, Inc.*, No. 875, 2012 WL 975834, at *1 n.1 (E.D. Pa. Feb. 28, 2012) (Robreno, J.) (citing *Lindstrom*, 424 F.3d at 492; *Stark v. Armstrong World Indus., Inc.*, 21 F. App'x 371, 375 (6th Cir. 2001)). "A mere showing that defendant's product was somewhere at Plaintiff's place of work is insufficient." *Duenas v. General Elec. Co.*, No. 875, 2014 WL 345232, at *1 n.1 (E.D. Pa. Jan. 29, 2014) (Robreno, J.) (quoting *Lindstrom*, 242 F.3d at 492).

At summary judgment, although the moving party "always bears the initial responsibility of informing the district court of the basis for its motion," the nonmoving party must subsequently "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Both parties must support their factual positions by: "(A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1).

Plaintiff has failed to satisfy her burden on causation. Plaintiff points to evidence in the record that Fend performed limited structural maintenance and repair on two aircraft models powered by asbestos-containing GE engines during the relevant period: the S-3 and the SH-3. Pl. Br. 3. Plaintiff then cites testimony that Fend performed engine-adjacent structural work on other aircraft models not powered by GE engines. Pl. Br. 4. In doing so, Plaintiff asks the Court to infer that Fend performed the very same engine-adjacent work on the S-3 and the SH-3.

The record fails to support Plaintiff's requested inference. The deposition of John Ericksen, a naval colleague of Fend's at the time, establishes that any structural work done by Fend on S-3 and SH-3 aircraft components took place away from the hangar and far from the engines. Def. Br. Ex. 4 at 155:24–156:7, 158:12–160:17. Plaintiff provides no evidence to the contrary.

Plaintiff also asserts that Fend's work on F-14s during his service exposed him to GE engines, although F-14s were not powered by GE engines during the relevant period. GE provides competent evidence, namely industry articles that can be authenticated for trial, that the F-14 did not incorporate GE engines until 1987. Def. Rep. Br. Ex. 4, Ex. 5. Fend only served aboard the USS Kennedy until 1986. Am. Compl. ¶ 10. To oppose this, Plaintiff relies on a Wikipedia article stating that F-14s are currently powered by GE engines. Pl. Br. Ex. F. But this Wikipedia article provides no citation to support this contention, and ostensibly refers to F-14s most recently manufactured and in use today, not thirty-five years ago when Fend served aboard the USS Kennedy.

At the summary judgment stage, a Court cannot rely on evidence from a source like Wikipedia that is inherently incapable of being authenticated for trial. *See Fraternal Ord. of Police, Lodge 1 v. City of Camden*, 842 F.3d 231, 201 (3d Cir. 2016) ("'[T]he rule in this circuit is that hearsay statements can be considered on a motion for summary judgment if they are capable of being admissible at trial.'" (quoting *Stelwagon Mfg. Co. v. Tarmac Roofing Sys.*, 63 F.3d 1267, 1275 n.17 (3d Cir. 1995))).

Because Plaintiff fails to support her contention that Fend performed structural work proximate to GE engines, she fails to meet her burden of proving that exposure to GE engines was a substantial cause of Fend's lung cancer. No reasonable jury could conclude from the

evidence presented that Plaintiff has met her burden of proving the elements of causation under maritime law. As such, Plaintiff's claims fail. I need not reach the parties' failure to warn and immunity arguments, and GE is entitled to summary judgment.

## III.    CONCLUSION

For the reasons set forth above, I will grant GE's motion for summary judgment.

**ORDER**

**AND NOW**, this 29th day of September, 2021, it is **ORDERED** that Defendant GE's

Motion for Summary Judgment (ECF No. 348) is **GRANTED**.

_s/ANITA B. BRODY, J._____
ANITA B. BRODY, J.

**COPIES VIA ECF**

6

EXHIBIT C

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM BOESENHOFER, *et al.* | : | CIVIL ACTION |
| *Plaintiffs* | : | |
| | : | NO. 17-1072 |
| v. | : | |
| | : | |
| AECOM, *et al.* | : | |
| *Defendants* | : | |

## ORDER

**AND NOW**, this 26th day of November 2021, upon consideration of Defendant CBS Corporation's *motion for summary judgment*, [ECF 235], Plaintiff's response in opposition, [ECF 243], Defendant's reply, [ECF 288], Defendant's supplemental/renewed motion, [ECF 312], Plaintiff's opposition to the renewed motion, [ECF 338], Defendant's supplemental reply, [ECF 344], Plaintiff's notice of supplemental authority, [ECF 371], and Defendant's notice of supplemental authority, [ECF 382], it is hereby **ORDERED** that Defendant's motion for summary judgment is **DENIED**.[1]

---

[1]      Mr. William J. Boesenhofer ("Mr. Boesenhofer") commenced this product liability action against numerous defendants in the Court of Common Pleas of Philadelphia County on May 27, 2016, and averred that his mesothelioma was caused by his exposures to numerous defendants' asbestos-containing products. After Mr. Boesenhofer's death in August 2016, his complaint was amended to substitute Rose Diane Boesenhofer, his widow and the executrix of his estate, as Plaintiff, and the action was later removed to this Court in 2017. In the amended complaint, Plaintiff alleges that the death of her husband, Mr. Boesenhofer, was caused by mesothelioma developed from exposure to numerous defendants' asbestos-containing products while working as a civilian employee at the Philadelphia Naval Shipyard (the "PNSY"). Specifically, Mr. Boesenhofer worked at the PNSY as a boilermaker mechanic from 1966 to 1978, as a ship systems boiler inspector from 1978 to 1986, and as a mechanical engineering technician from 1986 until his retirement in 1997. Mr. Boesenhofer was diagnosed with mesothelioma on April 8, 2016 and passed away on August 20, 2016.

        Before this Court are numerous motions for summary judgment. In the instant motion for summary judgment filed by CBS Corporation, successor by merger to Westinghouse Electric Corporation ("Defendant" or "Westinghouse"), Westinghouse argues that Plaintiff's evidence is insufficient: (1) to establish that Mr. Boesenhofer was exposed to any product for which it is responsible or that Westinghouse's product was a "substantial" cause of the illness at issue; or (2) to overcome the bare metal

and/or government contractor defenses.  Plaintiff disagrees and contends that she has produced sufficient evidence as to each of these issues to survive summary judgment.

I.      *Summary Judgment Standard*

Federal Rule of Civil Procedure ("Rule") 56 governs summary judgment motion practice.  Rule 56 requires a court to grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.  The movant bears the initial burden of informing the court of the basis for the motion and identifying the portions of the record that the movant "believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A fact is "material" if its existence or non-existence would affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of fact is "genuine" when there is sufficient evidence from which a reasonable juror could find in favor of the non-movant regarding the existence of that fact. *Id.* at 248–49.  If the non-moving party bears the burden of proof at trial, the movant can meet this burden by showing that the non-moving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

After the movant meets its initial burden, summary judgment is appropriate if the non-moving party fails to rebut the movant's claim by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" that show a genuine issue of material fact or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." *See* Fed. R. Civ. P. 56(c)(1)(A)–(B).  The non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The non-movant may not rely on "bare assertions, conclusory allegations or suspicions," *Fireman's Ins. Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982), nor rest on the allegations in the pleadings. *Celotex*, 477 U.S. at 324.  Rather, the non-movant must "go beyond the pleadings" and either by affidavits, depositions, answers to interrogatories, or admissions on file "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.*  "In considering the evidence, the court should draw all reasonable inferences against the moving party." *El v. SEPTA*, 479 F.3d 232, 238 (3d Cir. 2007).

II.     *Applicable Law: Maritime Law v. State Law*

In their respective briefs, the parties agree that Plaintiff's claims against Westinghouse are governed by maritime law, rather than Pennsylvania state substantive law, because Mr. Boesenhofer's alleged exposure(s) to Westinghouse's asbestos-containing products (turbines, draft blowers, and generators) occurred while Mr. Boesenhofer was aboard naval vessels docked at the PNSY.  This Court agrees and finds that the applicable "locality" and "connection" tests confirm that maritime law applies to Plaintiff's claims against Westinghouse. *See Conner v. Alfa Laval, Inc.*, 799 F. Supp. 2d 455, 463–66 (E.D. Pa. 2011) (discussing *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995)).

III.    *Westinghouse's Motion for Summary Judgment*

In its motion for summary judgment, Westinghouse argues several grounds for judgment in its favor, which this Court will briefly address.

A. *Insufficient Evidence*

Westinghouse argues that Plaintiff's evidence is insufficient to establish that any product for which it is responsible was a "substantial" cause of Mr. Boesenhofer's mesothelioma. Plaintiff disagrees and contends that she has identified sufficient product identification and causation evidence to survive summary judgment.

To establish causation for an asbestos claim under maritime law, a plaintiff must show that "(1) he was exposed to the defendant's product, and (2) the product was a substantial factor in causing the injury he suffered." *Lindstrom v. A-C Prod. Liab. Trust*, 424 F.3d 488, 492 (6th Cir. 2005), *abrogated on other grounds by Air and Liquid Systems Corp. v. DeVries*, — U.S. —, 139 S. Ct. 986, 994 (2019) (citing *Stark v. Armstrong World Indus., Inc.*, 21 F. App'x 371, 375 (6th Cir. 2001)). Substantial factor causation is determined separately for each defendant. *Stark*, 21 F. App'x at 375. Implicit in the test set forth in *Lindstrom* and *Stark* is the requirement that the plaintiff also show that the defendant manufactured or distributed the asbestos-containing product to which exposure is alleged. *Abbay v. Armstrong Int'l., Inc.*, 2012 WL 975837, at *1 n.1 (E.D. Pa. Feb. 29, 2012).

In establishing causation, a plaintiff may rely upon direct evidence and/or circumstantial evidence that supports an inference that the plaintiff was exposed to the defendant's product for some length of time. *Stark*, 21 F. App'x at 376 (quoting *Harbour v. Armstrong World Indus., Inc.*, 1991 WL 65201, at *4 (6th Cir. Apr. 25, 1991)). A mere "minimal exposure" to a defendant's product is insufficient to establish causation. *Lindstrom*, 424 F.3d at 492. "Likewise, a mere showing that defendant's product was present somewhere at plaintiff's place of work is insufficient." *Id.* Rather, the plaintiff must show "a high enough level of exposure that an inference that the asbestos was a substantial factor in the injury is more than conjectural." *Id.* (quoting *Harbour*, 1991 WL 65201, at *4). The exposure must have been "actual" or "real," but the question of "substantiality" is best left to the factfinder. *Redland Soccer Club, Inc. v. Dep't of Army of U.S.*, 55 F.3d 827, 851 (3d Cir. 1995).

To sustain her burden as to product identification and causation, Plaintiff cites to the following evidence:

> Deposition of Mr. Boesenhofer's Co-worker Daniel Cairns: From 1967 to 1972 and from 1976 to 1978, Mr. Cairns worked alongside Mr. Boesenhofer daily in the same boilermaker gang at the PNSY. From 1978 to 1986, Mr. Cairns worked alongside Mr. Boesenhofer every week as Mr. Boesenhofer inspected the work that Mr. Cairns and his crew performed. From 1986 until Mr. Boesenhofer's retirement in 1997, both Mr. Boesenhofer and Mr. Cairns worked together daily at PNSY's Naval Ship Systems Engineering Station as mechanical engineering technicians performing two-man boiler inspection and engineering jobs. Mr. Cairns testified that Mr. Boesenhofer repaired and overhauled various ships' main engine turbines, the exteriors of which were insulated with asbestos. Mr. Boesenhofer also removed asbestos-containing gaskets inside the turbines using a scraper and/or wire brush. He also installed forced draft blowers and was around other workers when they dismantled and overhauled various ships' turbine generators.

> Other Documentary Evidence: During the relevant time period, Westinghouse manufactured and supplied the Navy with turbines, forced draft blowers, and generators that utilized asbestos-containing components. These Westinghouse turbines, forced draft blowers, and generators were present on the Naval vessels on which Mr. Boesenhofer worked, though it does not appear that the products included asbestos-components when

delivered by Westinghouse.  It is undisputed, however, that the Westinghouse products eventually utilized asbestos-containing components.

Notably, Westinghouse concedes that there "is evidence that Mr. Boesenhofer experienced asbestos exposure from insulation or gaskets or materials used in connection with Westinghouse products."  (Def. Reply, ECF 288, at p. 5).

When considering Westinghouse's arguments, this evidence, viewed in the light most favorable to Plaintiff (the non-movant), creates a genuine issue of material fact with respect to Mr. Boesenhofer's exposure to respirable dust from asbestos-containing components utilized on the Westinghouse turbines, forced draft blowers, and generators while working aboard various ships at the PNSY and with respect to whether Westinghouse's asbestos-containing products were a substantial factor in causing Mr. Boesenhofer's mesothelioma.  Accordingly, Westinghouse's motion for summary judgment is denied on this argument.

*B.   Bare Metal Test*

Westinghouse also argues that it is entitled to summary judgment under the bare metal test, as reformulated by the United States Supreme Court in *Air & Liquid Sys. Corp. v DeVries*, 139 S. Ct. 986 (2019).  Specifically, Westinghouse argues that under the *DeVries* test, it owed no duty to warn Mr. Boesenhofer of the dangers of asbestos.  Westinghouse is mistaken.  In *DeVries*, the Supreme Court articulated a new "tightly cabined" maritime bare metal test, holding that:

> In the maritime tort context, a product manufacturer has a duty to warn when (i) its product requires incorporation of a part, (ii) the manufacturer knows or has reason to know that the integrated product is likely to be dangerous for its intended uses, and (iii) the manufacturer has no reason to believe that the product's users will realize that danger.

*Id*. at 995.

With respect to the first element, the *DeVries* Court provided examples of when a product "requires" incorporation of an asbestos part.  These include when: "(i) a manufacturer directs that the part be incorporated," "(ii) a manufacturer itself makes the product with a part that the manufacturer knows will require replacement with a similar part," "or (iii) a product would be useless without the part."  *Id*. at 995-96 (citations omitted).  Though Westinghouse argues that Plaintiff cannot establish any of these situations, this Court finds that Plaintiff has presented evidence sufficient to create genuine issues of material fact as to this requirement.  In particular, Plaintiff has presented evidence (primarily through its expert, Arnold P. Moore) that Westinghouse supplied the Navy with turbines, forced draft blowers, and generators that eventually incorporated various asbestos-containing components.  Plaintiff also cited to design drawings produced by Westinghouse that specified the incorporation of asbestos-containing parts (though Westinghouse disputes whether it, the Navy, or the Navy's builder originally specified incorporation of the parts).  This evidence supports an inference that Westinghouse was aware that the Navy would have to replace the asbestos-containing components and that the Navy would likely replace them with like asbestos-containing parts.  This evidence creates a genuine issue of material fact with respect to the first *DeVries* requirement.

As to the second element of the bare metal test, whether Westinghouse had reason to believe its turbines, forced draft blowers, and generators, with the incorporation of asbestos-containing components, were dangerous, this Court finds that Plaintiff has proffered evidence sufficient to raise a genuine dispute

of material fact.  In particular, Plaintiff has presented evidence showing knowledge, within the relevant industries and during the relevant time period, that asbestos posed a danger to those working in its vicinity. Plaintiff's proffered evidence suggests that Westinghouse had actual and/or constructive knowledge of the dangers of asbestos exposure during the relevant time period.  The record also suggests that using the Westinghouse turbines, forced draft blowers, and generators, as intended would have necessitated regular removal and replacement of asbestos-containing components.  Further, the record shows that Westinghouse knew or should have known that doing maintenance work on its products would expose workers to asbestos dust.  This evidence creates a genuine dispute of material fact with respect to the second element of the *DeVries* test.

Finally, as to the third element of the bare metal test, whether Westinghouse had no reason to believe that users would realize the danger of using its products, record evidence is sufficient to create a genuine dispute of material fact. Westinghouse contends that the evidence shows that it had every reason to believe that the Navy would inform users, such as Mr. Boesenhofer, of the dangers since it had a safety program in place related to asbestos during the relevant time period.  Westinghouse also points to other evidence, however, that shows that the Navy did not believe the use of asbestos-containing gaskets and packing with shipboard equipment posed a risk of harm to shipyard employees.  This evidence creates a genuine issue of material fact as to whether Westinghouse had reason to believe that the Navy would inform users as to the dangers of asbestos.  *See Hammell v. Air & Liquid Systems Corp.*, 2020 WL 5107478, at *7 (D. N.J. Aug. 31, 2020) ("This alone is sufficient to create a genuine dispute of material fact because the Navy was not aware of the dangers of asbestos-containing gaskets in environments such as the shipyard where [the plaintiff's decedent] worked and Defendants had reason to know the Navy would not realize the dangers posed by their products when in shipyards."); *In re Asbestos Litig.*, 2021 WL 3025842, at *8 (D. Del. July 16, 2021), *report & recommendation adopted*, 2021 WL 3662847 (D. Del. Aug. 18, 2021) (denying motion for summary judgment premised on bare metal test).  As such, Westinghouse's motion for summary judgment on this argument is denied.

C. *Government Contractor Defense*

Though not raised in its initial motion for summary judgment, in its supplemental/renewed motion, Westinghouse argues that Plaintiff has failed to present evidence sufficient to overcome application of the government contractor defense.  Specifically, Westinghouse argues that the undisputed evidence shows that the Navy exercised discretion and approved the warnings supplied by Westinghouse for the products at issue, Westinghouse provided warnings that conformed to the Navy's approved warnings, and the Navy knew about asbestos and its hazards.  Plaintiff argues that summary judgment on grounds of the government contractor defense is not warranted because the Navy never precluded warnings about asbestos hazards, and, instead, left the nature of warnings to the determination of manufacturers, with some explicit requirements that the manufacturer warn.

To satisfy the government contractor defense, a defendant must show that (1) the United States government approved reasonably precise specifications for the product at issue; (2) the equipment conformed to those specifications; and (3) the defendant warned the United States about the dangers in the use of the equipment that were known to it but not to the United States. *Boyle v. United Technologies Corp.*, 487 U.S. 500, 512 (1988).  Courts applying *Boyle* to failure to warn cases have articulated three criteria necessary to establish the immunity defense, holding that it is established when "(1) the government exercised its discretion and approved certain warnings; (2) the contractor provided the warnings required by the government; [and] (3) the contractor warned the government about dangers in the equipment's use that were known to the contractor but not to the government." *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992,

BY THE COURT:

/s/ Nitza I. Quiñones Alejandro

**NITZA I. QUIÑONES ALEJANDRO**
*Judge, United States District Court*

---

1003–04 (7th Cir. 1996); *see also Jowers v. Lincoln Electric Co.*, 617 F.3d 346, 352 (5th Cir. 2010); *Tate v. Boeing Helicopters*, 55 F.3d 1150, 1157 (6th Cir. 1995). When applied in the failure to warn context, the government need not prohibit the contractor from providing additional warnings; the defense applies so long as the government dictated or approved the warnings that the contractor actually provided. *See Tate*, 55 F.3d at 1157 ("Government *discretion* is required, not dictation or prohibition of warnings"). Where "the government chooses its own warnings," rather than merely approves of a contractor's, it has "certainly" exercised the requisite discretion to support a colorable defense for the contractor. *Oliver*, 96 F.3d at 1004; *see also Tate*, 55 F.3d at 1157.

To sustain its burden on the government contractor defense, a defendant must show that the Government "issued reasonably precise specifications covering warnings-specifications that reflect a considered judgment about the warnings at issue." *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 783 (E.D. Pa. 2010) (citing *Holdren v. Buffalo Pumps, Inc.*, 614 F. Supp. 2d 129, 143 (D. Mass. 2009)); *Cuomo v. Crane Co.*, 771 F.3d 113, 117 (2d Cir. 2014) (no explicit mention of warnings is necessary). Government approval of warnings must "transcend rubber stamping" to allow a defendant to be shielded from state law liability. *Hagen*, 739 F. Supp. 2d at 783. At the summary judgment stage, a defendant asserting the government contractor defense has the burden of showing the absence of a genuine dispute as to any material fact regarding whether it is entitled to the government contractor defense. *Various v. Various*, 856 F. Supp. 2d 703, 709-10 (E.D. Pa. 2012). "Ordinarily, because of the standard applied at the summary judgment stage, defendants are not entitled to summary judgment pursuant to the government contractor defense." *Id.* at 710.

Here, this Court need not look any further than the first and second prongs of *Boyle* to find material facts in dispute. The parties have provided countervailing evidence as to the precision of military specifications for both design and obligation to warn. Specifically, Plaintiff has pointed to evidence that contradicts (or at least appears to be inconsistent with) Westinghouse's evidence as to whether the Navy did or did not exercise considered judgment over whether warnings could be included with Westinghouse's products. This evidence includes, *inter alia*, the expert report and testimony of Captain Arnold Moore, military specifications (including various iterations of MIL–M–15071), and other Department of Defense labeling requirements. Plaintiff contends this evidence demonstrates that the Navy would have permitted Westinghouse to include warnings with its products, and even expressly required warnings from such manufacturers, and that it left the discretion to warn largely to the manufacturers. This is sufficient to raise genuine disputes of material fact as to whether the first and second prongs of the *Boyle* test are satisfied with respect to Westinghouse. *See Willis v. BW IP Intern. Inc.*, 811 F. Supp. 2d 1146, 1156 (E.D. Pa. 2011) (denying Westinghouse's motion for summary judgment premised on government contractor defense); *Salisbury v. Asbestos Corp. Ltd.*, 2014 WL 345214, at *1 n.1 (E.D. Pa. Jan. 29, 2014) (denying summary judgment on government contractor defense where plaintiff pointed to MIL-M-15071D); *Ferguson v. Air & Liquid Systems Corp.*, 2014 WL 7652953, at *1 n.1 (E.D. Pa. Dec. 3, 2014) (same); *In re Asbestos Litig.*, 2021 WL 3025842, at *9 (D. Del. July 16, 2021) (same), *report & recommendation adopted*, 2021 WL 3662847 (D. Del. Aug. 18, 2021). Accordingly, summary judgment on grounds of the government contractor defense is not warranted.

For the reasons set forth, CBS' (Westinghouse) motion for summary judgment is denied, in its entirety.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WILLIAM BOESENHOFER**, *et al.* | : | **CIVIL ACTION** |
| *Plaintiffs* | : | |
| | : | **NO. 17-1072** |
| **v.** | : | |
| | : | |
| **AECOM**, *et al.* | : | |
| *Defendants* | : | |
| | : | |

## ORDER

**AND NOW**, this 30th day of November 2021, upon consideration of Defendant Cleaver-Brooks, Inc.'s *motion for summary judgment*, [ECF 224], Plaintiff's response in opposition, [ECF 241], Defendant's reply, [ECF 273], Defendant's supplemental motion, [ECF 316], Plaintiff's opposition to the supplemental motion, [ECF 332], Defendant's supplemental reply, [ECF 346], and Plaintiff's notice of supplemental authority, [ECF 384], it is hereby **ORDERED** that Defendant's motion for summary judgment is **DENIED**.[1]

---

[1]   Mr. William J. Boesenhofer ("Mr. Boesenhofer") commenced this product liability action against numerous defendants in the Court of Common Pleas of Philadelphia County on May 27, 2016, and averred that his mesothelioma was caused by his exposures to the defendants' asbestos-containing products. After Mr. Boesenhofer's death in August 2016, his complaint was amended to substitute Rose Diane Boesenhofer, his widow and the executrix of his estate, as Plaintiff, and this action was later removed to this Court in 2017. In the amended complaint, Plaintiff alleges that her husband, Mr. Boesenhofer, developed mesothelioma as a result of exposure to numerous defendants' asbestos-containing products while working as a civilian employee at the Philadelphia Naval Shipyard (the "PNSY"). Specifically, Mr. Boesenhofer worked at the PNSY as a boilermaker mechanic from 1966 to 1978, as a ship systems boiler inspector from 1978 to 1986, and as a mechanical engineering technician from 1986 until his retirement in 1997. Mr. Boesenhofer was diagnosed with mesothelioma on April 8, 2016, and passed away on August 20, 2016.

Before this Court are numerous motions for summary judgment. Instantly is the motion for summary judgment filed by Cleaver-Brooks ("Defendant" or "Cleaver"), in which Cleaver argues that Plaintiff's evidence is insufficient: (1) to establish that Mr. Boesenhofer was exposed to any product for which it is responsible or that Cleaver's product was a "substantial" cause of the illness at issue; or (2) to overcome the government contractor and/or bare metal defenses. Plaintiff disagrees and contends that she has produced sufficient evidence as to each of these issues to survive summary judgment.

I.    *Summary Judgment Standard*

Federal Rule of Civil Procedure ("Rule") 56 governs summary judgment motion practice. Rule 56 requires a court to grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The movant bears the initial burden of informing the court of the basis for the motion and identifying the portions of the record that the movant "believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is "material" if its existence or non-existence would affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of fact is "genuine" when there is sufficient evidence from which a reasonable juror could find in favor of the non-movant regarding the existence of that fact. *Id.* at 248–49. If the non-moving party bears the burden of proof at trial, the movant can meet this burden by showing that the non-moving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

After the movant meets its initial burden, summary judgment is appropriate if the non-moving party fails to rebut the movant's claim by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" that show a genuine issue of material fact or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." *See* Fed. R. Civ. P. 56(c)(1)(A)–(B). The non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-movant may not rely on "bare assertions, conclusory allegations or suspicions," *Fireman's Ins. Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982), nor rest on the allegations in the pleadings. *Celotex*, 477 U.S. at 324. Rather, the non-movant must "go beyond the pleadings" and either by affidavits, depositions, answers to interrogatories, or admissions on file "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* "In considering the evidence, the court should draw all reasonable inferences against the moving party." *El v. SEPTA*, 479 F.3d 232, 238 (3d Cir. 2007).

II.    *Applicable Law: Maritime Law v. State Law*

In their respective briefs, the parties agree that Plaintiff's claims against Cleaver are governed by maritime law, rather than Pennsylvania state substantive law, because Mr. Boesenhofer's alleged exposure(s) to Cleaver's asbestos-containing products (boilers) occurred primarily while Mr. Boesenhofer was aboard naval vessels docked at the PNSY. This Court agrees and finds that under the applicable "locality" and "connection" tests, maritime law applies to Plaintiff's claims against Cleaver. *See Conner v. Alfa Laval, Inc.*, 799 F. Supp. 2d 455, 463-66 (E.D. Pa. 2011) (discussing *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995)).

III.    *Cleaver's Motion for Summary Judgment*

In its motion for summary judgment, Cleaver argues several grounds for judgment in its favor, which this Court will briefly address.

A.    *Insufficient Evidence*

Cleaver argues that Plaintiff's evidence is insufficient to establish that any product for which it is responsible was a "substantial" cause of Mr. Boesenhofer's mesothelioma. Plaintiff disagrees and contends

that she has identified sufficient product identification and causation evidence to survive summary judgment.

To establish causation for an asbestos claim under maritime law, a plaintiff must show that "(1) he was exposed to the defendant's product, and (2) the product was a substantial factor in causing the injury he suffered." *Lindstrom v. A-C Prod. Liab. Trust*, 424 F.3d 488, 492 (6th Cir. 2005), *abrogated on other grounds by Air and Liquid Systems Corp. v. DeVries*, __ U.S. __, 139 S. Ct. 986, 994 (2019) (citing *Stark v. Armstrong World Indus., Inc.*, 21 F. App'x 371, 375 (6th Cir. 2001)). Substantial factor causation is determined separately for each defendant. *Stark*, 21 F. App'x at 375. Implicit in the test set forth in *Lindstrom* and *Stark*, a plaintiff must also show that the defendant manufactured or distributed the asbestos-containing product to which exposure is alleged. *Abbay v. Armstrong Int'l., Inc.*, 2012 WL 975837, at *1 n.1 (E.D. Pa. Feb. 29, 2012).

In establishing causation, a plaintiff may rely upon direct evidence and/or circumstantial evidence that supports an inference that the plaintiff was exposed to the defendant's product for some length of time. *Stark*, 21 F. App'x at 376 (quoting *Harbour v. Armstrong World Indus., Inc.*, 1991 WL 65201, at *4 (6th Cir. April 25, 1991)). A mere "minimal exposure" to a defendant's product is insufficient to establish causation. *Lindstrom*, 424 F.3d at 492. "Likewise, a mere showing that defendant's product was present somewhere at plaintiff's place of work is insufficient." *Id.* Rather, the plaintiff must show "a high enough level of exposure that an inference that the asbestos was a substantial factor in the injury is more than conjectural." *Id.* (quoting *Harbour*, 1991 WL 65201, at *4). The exposure must have been "actual" or "real," but the question of "substantiality" is best left to the fact-finder. *Redland Soccer Club, Inc. v. Dep't of Army of U.S.*, 55 F.3d 827, 851 (3d Cir. 1995).

To sustain her burden as to product identification and causation, Plaintiff cites to the following evidence:

<u>Deposition of Mr. Boesenhofer's Co-worker Daniel Cairns:</u> From 1967 to 1972 and from 1976 to 1978, Mr. Cairns worked alongside Mr. Boesenhofer daily in the same boilermaker gang at the PNSY. From 1978 to 1986, Mr. Cairns worked alongside Mr. Boesenhofer every week as Mr. Boesenhofer inspected the work that Mr. Cairns and his crew performed. From 1986 until Mr. Boesenhofer's retirement in 1997, both Mr. Boesenhofer and Mr. Cairns worked together daily at PNSY's Naval Ship Systems Engineering Station as mechanical engineering technicians performing two-man boiler inspection and engineering jobs. Mr. Cairns testified that Mr. Boesenhofer opened several Cleaver boilers to perform inspections and tube work. To open the Cleaver boilers, Mr. Boesenhofer removed handhole plates and gaskets, manway gaskets, and rope and tadpole gaskets using a scraper and wire brush. This process created airborne dust. Mr. Boesenhofer then replaced the gaskets, sometimes using replacement gaskets ordered from and supplied by Cleaver.

<u>Other Documentary Evidence:</u> During the relevant time period, Cleaver manufactured and supplied the PNSY with at least one boiler which contained asbestos packing and gaskets. In addition, Cleaver provided replacement components to PNSY for use with the boiler. Cleaver specified the use of asbestos insulation material and cement in its boilers.

When considering Cleaver's arguments, this evidence, viewed in the light most favorable to Plaintiff (the non-movant), creates a genuine issue of material fact with respect to Mr. Boesenhofer's exposure to respirable dust from asbestos-containing components utilized on the Cleaver boilers while working aboard various ships at the PNSY and with respect to whether Cleaver's asbestos-containing

products were a substantial factor in causing Mr. Boesenhofer's mesothelioma.  Accordingly, Cleaver's motion for summary judgment is denied in this respect.

    *B.   Government Contractor Defense*

    Cleaver argues that it is entitled to immunity afforded by the government contractor defense. Specifically, Cleaver argues that it cannot be liable where the replacement parts used on the Cleaver boilers were not manufactured by Cleaver.  In response, Plaintiff argues that Cleaver has failed to present evidence sufficient to sustain this affirmative defense.

    To satisfy the government contractor defense, a defendant must show that (1) the United States approved reasonably precise specifications for the product at issue; (2) the equipment conformed to those specifications; and (3) the defendant warned the United States about the dangers in the use of the equipment that were known to defendant but not to the United States. *Boyle v. United Technologies Corp.*, 487 U.S. 500, 512 (1988).  Courts applying *Boyle* to failure to warn cases have articulated three criteria necessary to establish the immunity defense, holding that it is established when "(1) the government exercised its discretion and approved certain warnings; (2) the contractor provided the warnings required by the government; [and] (3) the contractor warned the government about dangers in the equipment's use that were known to the contractor but not to the government." *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 1003–04 (7th Cir. 1996); *see also Jowers v. Lincoln Electric Co.*, 617 F.3d 346, 352 (5th Cir. 2010); *Tate v. Boeing Helicopters*, 55 F.3d 1150, 1157 (6th Cir. 1995). When applied in the failure to warn context, the government need not prohibit the contractor from providing additional warnings; the defense applies so long as the government dictated or approved the warnings that the contractor actually provided. *See Tate*, 55 F.3d at 1157 ("Government *discretion* is required, not dictation or prohibition of warnings").  Where "the government chooses its own warnings," rather than merely approves those of a contractor's, the government has "certainly" exercised the requisite discretion to support a colorable defense for the contractor. *Oliver*, 96 F.3d at 1004; *see also Tate*, 55 F.3d at 1157.

    To sustain its burden on the government contractor defense, a defendant must show that the government "issued reasonably precise specifications covering warnings-specifications that reflect a considered judgment about the warnings at issue." *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 783 (E.D. Pa. 2010) (citing *Holdren v. Buffalo Pumps, Inc.*, 614 F. Supp. 2d 129, 143 (D. Mass. 2009)); *Cuomo v. Crane Co.*, 771 F.3d 113, 117 (2d Cir. 2014) (no explicit mention of warnings is necessary).  Government approval of warnings must "transcend rubber stamping" to allow a defendant to be shielded from state law liability. *Hagen*, 739 F. Supp. 2d at 783. At the summary judgment stage, a defendant asserting the government contractor defense has the burden of showing the absence of a genuine dispute as to any material fact regarding whether it is entitled to the government contractor defense. *Various v. Various*, 856 F. Supp. 2d 703, 709-10 (E.D. Pa. 2012).  "Ordinarily, because of the standard applied at the summary judgment stage, defendants are not entitled to summary judgment pursuant to the government contractor defense." *Id.* at 710.

    Here, Cleaver has made no effort to meet its summary judgment burden with respect to the government contractor defense.  For example, Cleaver has not pointed to any government specifications for the products Cleaver provided or any evidence that Cleaver's products conformed to those specifications. Moreover, Plaintiff has provided evidence that at least supports the notion that the Navy would have permitted Cleaver to include warnings with its products and had left the discretion to warn largely to the manufacturers.  This evidence is sufficient to raise genuine disputes of material fact as to whether Cleaver satisfied the first and second prongs of the *Boyle* test. *See Willis v. BW IP Intern. Inc.*, 811 F. Supp. 2d 1146, 1156 (E.D. Pa. 2011); *Salisbury v. Asbestos Corp. Ltd.*, 2014 WL 345214, at *1 n.1 (E.D. Pa. Jan.

29, 2014) (denying summary judgment on government contractor defense where plaintiff pointed to MIL-M-15071D); *Ferguson v. Air & Liquid Systems Corp.*, 2014 WL 7652953, at *1 n.1 (E.D. Pa. Dec. 3, 2014) (same); *In re Asbestos Litig.*, 2021 WL 3025842, at *9 (D. Del. July 16, 2021) (same), *report & recommendation adopted*, 2021 WL 3662847 (D. Del. Aug. 18, 2021).  Accordingly, summary judgment based on the government contractor defense is not warranted.

    *C.   Bare Metal Test*

    Cleaver next baldly argues that it is entitled to summary judgment under the bare metal test, as reformulated by the United States Supreme Court in *Air & Liquid Sys. Corp. v DeVries*, 139 S. Ct. 986 (2019).  Specifically, Cleaver argues that under the *DeVries* test, it owed no duty to warn Mr. Boesenhofer of the dangers of asbestos.  Cleaver is mistaken.  In *DeVries*, the Supreme Court articulated a new "tightly cabined" maritime bare metal test, holding that:

> In the maritime tort context, a product manufacturer has a duty to warn when (i) its product requires incorporation of a part, (ii) the manufacturer knows or has reason to know that the integrated product is likely to be dangerous for its intended uses, and (iii) the manufacturer has no reason to believe that the product's users will realize that danger.

*Id.* at 995.  With respect to the first element, the *DeVries* Court provided examples of when a product "requires" incorporation of an asbestos part, to include when: "(i) a manufacturer directs that the part be incorporated," "(ii) a manufacturer itself makes the product with a part that the manufacturer knows will require replacement with a similar part," "or (iii) a product would be useless without the part."  *Id.* at 995-96 (citations omitted).

    Notably, apart from asserting in conclusory fashion that no evidence exists to support these requirements, Cleaver provides no substantive argument.  Regardless, this Court finds that Plaintiff has presented evidence sufficient to create genuine issues of material fact as to these requirements.  In particular, Plaintiff has presented evidence that Cleaver supplied the Navy with boilers that utilized asbestos-containing gaskets and packing and specified the use of asbestos-containing replacement parts with its boilers.  This evidence creates a genuine issue of material fact with respect to the first *DeVries* requirement.

    As to the second element of the bare metal test, whether Cleaver had reason to believe its boilers, with the incorporation of asbestos-containing components, were dangerous, this Court finds that Plaintiff has proffered evidence sufficient to raise a genuine dispute of material fact.  In particular, Plaintiff has presented evidence showing knowledge, within the relevant industries and during the relevant time period, that asbestos posed a danger to those working in its vicinity.  Plaintiff's proffered evidence suggests that Cleaver had actual and/or constructive knowledge of the dangers of asbestos exposure during the relevant time period.  The record also suggests that using the Cleaver boilers as intended would have necessitated regular removal and replacement of asbestos-containing components.  Further, the record shows that Cleaver knew or should have known that doing maintenance work on Cleaver's boilers would expose workers to asbestos dust.  This evidence creates a genuine dispute of material fact with respect to the second element of the *DeVries* test.

    Finally, as to the third element of the bare metal test, whether Cleaver had no reason to believe that users would realize the danger of using its products, record evidence is sufficient to create a genuine dispute of material fact.  Record evidence shows that the Navy did not believe the use of asbestos-containing gaskets and packing with shipboard equipment posed a risk of harm to shipyard employees.  This evidence creates

**BY THE COURT:**


/s/ Nitza I. Quiñones Alejandro
**NITZA I. QUIÑONES ALEJANDRO**
*Judge, United States District Court*

---

a genuine issue of material fact as to whether Cleaver had reason to believe that the Navy would inform users as to the dangers of asbestos. *See Hammell*, 2020 WL 5107478, at *7 ("This alone is sufficient to create a genuine dispute of material fact because the Navy was not aware of the dangers of asbestos-containing gaskets in environments such as the shipyard where [the plaintiff's decedent] worked and Defendants had reason to know the Navy would not realize the dangers posed by their products when in shipyards."); *In re Asbestos Litig.*, 2021 WL 3025842, at *8 (D. Del. July 16, 2021), *report & recommendation adopted*, 2021 WL 3662847 (D. Del. Aug. 18, 2021) (denying motion for summary judgment premised on bare metal test).  As such, Cleaver's motion for summary judgment based on the bare metal test argument is denied.

For all the reasons set forth, Cleaver's motion for summary judgment is denied in its entirety.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WILLIAM BOESENHOFER**, *et al.* | : | **CIVIL ACTION** |
| *Plaintiffs* | : | |
| | : | **NO. 17-1072** |
| **v.** | : | |
| | : | |
| **AECOM**, *et al.* | : | |
| *Defendants* | : | |

## ORDER

**AND NOW**, this 24th day of November 2021, upon consideration of Defendant Electrolux Home Products, Inc.'s *motion for summary judgment*, [ECF 217], Plaintiff's response in opposition, [ECF 242], Defendant's reply, [ECF 274], Defendant's supplemental motion, [ECF 317], Plaintiff's opposition to the supplemental motion, [ECF 334], Defendant's supplemental reply, [ECF 348], Plaintiff's motion for leave to file supplemental authority, [ECF 371], Plaintiff's notice of supplemental authority, [ECF 384], and Defendant's notice of supplemental authority, [ECF 387], it is hereby **ORDERED** that Defendant Electrolux Home Products, Inc's motion for summary judgment is **DENIED**.[1]

---

[1]      Mr. William J. Boesenhofer ("Mr. Boesenhofer") commenced this product liability action against numerous defendants in the Court of Common Pleas of Philadelphia County on May 27, 2016, and he averred that his mesothelioma was caused by his exposures to numerous defendants' asbestos-containing products.  After Mr. Boesenhofer's death in August 2016, his complaint was amended to substitute Rose Diane Boesenhofer, his widow and the executrix of his estate, as Plaintiff, and the action was later removed to this Court in 2017.  In the amended complaint, Plaintiff alleges that the death of her husband, Mr. Boesenhofer, was caused by mesothelioma developed from exposure to numerous defendants' asbestos-containing products while working as a civilian employee at the Philadelphia Naval Shipyard (the "PNSY"). Specifically, Mr. Boesenhofer worked at the PNSY as a boilermaker mechanic from 1966 to 1978, as a ship systems boiler inspector from 1978 to 1986, and as a mechanical engineering technician from 1986 until his retirement in 1997.  Mr. Boesenhofer was diagnosed with mesothelioma on April 8, 2016 and passed away on August 20, 2016.

        Before this Court are numerous motions for summary judgment.  In the instant motion for summary judgment filed by Electrolux Home Products, Inc., formerly known as Copes Vulcan ("Defendant" or "Copes Vulcan"), Defendant argues that Plaintiff's evidence is insufficient:  (1) to establish that Mr.

Boesenhofer was exposed to any product for which it is responsible or that its product was a "substantial" cause of the illness at issue or (2) to overcome the *bare metal* defense. Plaintiff disagrees and contends that she has produced sufficient evidence as to each of these issues to survive summary judgment. This Court agrees with Plaintiff.

I.      *Summary Judgment Standard*

        Federal Rule of Civil Procedure ("Rule") 56 governs summary judgment motion practice. Rule 56 requires a court to grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The movant bears the initial burden of informing the court of the basis for the motion and identifying the portions of the record that the movant "believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is "material" if its existence or non-existence would affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of fact is "genuine" when there is sufficient evidence from which a reasonable juror could find in favor of the non-movant regarding the existence of that fact. *Id.* at 248–49. If the non-moving party bears the burden of proof at trial, the movant can meet this burden by showing that the non-moving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

        After the movant meets its initial burden, summary judgment is appropriate if the non-moving party fails to rebut the movant's claim by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" that show a genuine issue of material fact or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." *See* Fed. R. Civ. P. 56(c)(1)(A)–(B). The non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-movant may not rely on "bare assertions, conclusory allegations or suspicions," *Fireman's Ins. Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982), nor rest on the allegations in the pleadings. *Celotex*, 477 U.S. at 324. Rather, the non-movant must "go beyond the pleadings" and either by affidavits, depositions, answers to interrogatories, or admissions on file "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* "In considering the evidence, the court should draw all reasonable inferences against the moving party." *El v. SEPTA*, 479 F.3d 232, 238 (3d Cir. 2007).

II.     *Applicable Law: Maritime Law v. State Law*

        In their respective briefs, the parties agree that Plaintiff's claims against Defendant are governed by maritime law, rather than Pennsylvania state substantive law, because Mr. Boesenhofer's alleged exposure(s) to Copes Vulcan's asbestos-containing products (soot blowers) occurred primarily while Mr. Boesenhofer was aboard naval vessels docked at the PNSY. This Court agrees and finds that the applicable "locality" and "connection" tests, confirm that maritime law applies to Plaintiff's claims against Electrolux Home Products, Inc., formerly Copes Vulcan. *See Conner v. Alfa Laval, Inc.*, 799 F. Supp. 2d 455, 463–66 (E.D. Pa. 2011) (discussing *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995)).

III.    *Electrolux Home Products, Inc.'s Motion for Summary Judgment*

        In its motion for summary judgment, Defendant argues several grounds for judgment in its favor, which this Court will briefly address.

A. *Insufficient Evidence*

Defendant argues that Plaintiff's evidence is insufficient to establish that any product for which it is responsible was a "substantial" cause of Mr. Boesenhofer's mesothelioma. Plaintiff disagrees and argues that she has presented sufficient product identification and related causation evidence to survive summary judgment.

To establish causation for an asbestos claim under maritime law, a plaintiff must show that "(1) he was exposed to the defendant's product, and (2) the product was a substantial factor in causing the injury he suffered." *Lindstrom v. A-C Prod. Liab. Trust*, 424 F.3d 488, 492 (6th Cir. 2005), *abrogated on other grounds by Air and Liquid Systems Corp. v. DeVries*, — U.S. —, 139 S. Ct. 986, 994 (2019) (citing *Stark v. Armstrong World Indus., Inc.*, 21 F. App'x 371, 375 (6th Cir. 2001)). Substantial factor causation is determined separately for each defendant. *Stark*, 21 F. App'x at 375. Implicit in the test set forth in *Lindstrom* and *Stark* is the requirement that the plaintiff also show that the defendant manufactured or distributed the asbestos-containing product to which exposure is alleged. *Abbay v. Armstrong Int'l., Inc.*, 2012 WL 975837, at *1 n.1 (E.D. Pa. Feb. 29, 2012).

In establishing causation, a plaintiff may rely upon direct evidence and/or circumstantial evidence that supports an inference that the plaintiff was exposed to the defendant's product for some length of time. *Stark*, 21 F. App'x at 376 (quoting *Harbour v. Armstrong World Indus., Inc.*, 1991 WL 65201, at *4 (6th Cir. Apr. 25, 1991)). A mere "minimal exposure" to a defendant's product is insufficient to establish causation. *Lindstrom*, 424 F.3d at 492. "Likewise, a mere showing that defendant's product was present somewhere at plaintiff's place of work is insufficient." *Id.* Rather, the plaintiff must show "a high enough level of exposure that an inference that the asbestos was a substantial factor in the injury is more than conjectural." *Id.* (quoting *Harbour*, 1991 WL 65201, at *4). The exposure must have been "actual" or "real," but the question of "substantiality" is best left to the factfinder. *Redland Soccer Club, Inc. v. Dep't of Army of U.S.*, 55 F.3d 827, 851 (3d Cir. 1995).

To sustain her burden as to product identification and causation, Plaintiff cites to the following evidence:

*Deposition of Mr. Boesenhofer's Coworker Daniel Cairns*: From 1967 to 1972 and from 1976 to 1978, Mr. Cairns worked daily alongside Mr. Boesenhofer in the same boilermaker gang at the PNSY. From 1978 to 1986, Mr. Cairns worked alongside Mr. Boesenhofer every week as Mr. Boesenhofer inspected the work that Mr. Cairns and his crew performed. From 1986 until Mr. Boesenhofer's retirement in 1997, Mr. Boesenhofer and Mr. Cairns worked together daily at PNSY's Naval Ship Systems Engineering Station as mechanical engineering technicians performing two-man boiler inspection and engineering jobs. Mr. Cairns testified that Mr. Boesenhofer repaired and overhauled various ships' boilers, which included Copes Vulcan soot blowers. The removal of the Copes Vulcan soot blowers involved the scraping and wire-brushing of asbestos gaskets. When working on and reconstructing Copes Vulcan soot blowers, Mr. Boesenhofer installed asbestos packing and gaskets per Copes Vulcan's specifications.

*Other Documentary Evidence*: During the relevant time period, Copes Vulcan manufactured and supplied the Navy with soot blowers that utilized asbestos-containing components. These Copes Vulcan soot blowers were present on the Naval vessels on which Mr. Boesenhofer worked. Though it is unclear whether the soot blowers were originally manufactured, delivered, and/or installed with asbestos-containing components,

BY THE COURT:

/s/ Nitza I. Quiñones Alejandro
**NITZA I. QUIÑONES ALEJANDRO**
*Judge, United States District Court*

_____

it is undisputed that the Copes Vulcan products eventually utilized asbestos-containing components.

This evidence, viewed in the light most favorable to Plaintiff (the non-movant), is sufficient to sustain her burden as to product identification and causation and, thus, creates a genuine issue of material fact with respect to Mr. Boesenhofer's exposure to respirable dust from asbestos-containing components utilized on the Copes Vulcan soot blowers while working aboard various ships at the PNSY and whether Copes Vulcan's asbestos-containing products were a substantial factor in causing Mr. Boesenhofer's mesothelioma. Accordingly, Defendant's motion for summary judgment is denied on these issues.

  B.  *Bare Metal Test*

Defendant next argues that it is entitled to summary judgment under the bare metal test, as reformulated by the United States Supreme Court in *Air & Liquid Sys. Corp. v DeVries*, 139 S. Ct. 986 (2019). In *DeVries*, the Supreme Court articulated a new "tightly cabined" maritime bare metal test, holding that:

> In the maritime tort context, a product manufacturer has a duty to warn when (i) its product requires incorporation of a part, (ii) the manufacturer knows or has reason to know that the integrated product is likely to be dangerous for its intended uses, and (iii) the manufacturer has no reason to believe that the product's users will realize that danger.

*Id.* at 995.

Defendant contends only that Plaintiff cannot meet the third element of the bare metal test, *i.e.*, whether Copes Vulcan had no reason to believe that users would realize the danger of using its products. Defendant argues that the evidence shows that it had every reason to believe that the Navy would inform users, such as Mr. Boesenhofer, of the dangers since the Navy, as a sophisticated purchaser, should have been aware of the potential dangers of asbestos. Record evidence, however, shows that the Navy did not believe the use of asbestos-containing gaskets and packing with shipboard equipment posed a risk of harm to shipyard employees. This evidence creates a genuine issue of material fact as to whether Defendant had reason to believe that the Navy would inform users as to the dangers of asbestos. *See Hammell v. Air & Liquid Sys. Corp.*, 2020 WL 5107478, at *7 (D. N.J. Aug. 31, 2020) ("This alone is sufficient to create a genuine dispute of material fact because the Navy was not aware of the dangers of asbestos-containing gaskets in environments such as the shipyard where [the plaintiff's decedent] worked and Defendants had reason to know the Navy would not realize the dangers posed by their products when in shipyards."); *In re Asbestos Litig.*, 2021 WL 3025842, at *8 (D. Del. July 16, 2021), *report & recommendation adopted*, 2021 WL 3662847 (D. Del. Aug. 18, 2021) (denying motion for summary judgment premised on bare metal test). As such, Defendant's motion for summary judgment based on the bare metal test argument is denied.

For the reasons set forth, Defendant's motion for summary judgment is denied in its entirety.

4

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WILLIAM BOESENHOFER**, *et al.* | : | **CIVIL ACTION** |
| *Plaintiffs* | : | |
| | : | **NO. 17-1072** |
| **v.** | : | |
| | : | |
| **AECOM**, *et al.* | : | |
| *Defendants* | : | |

## ORDER

**AND NOW**, this 24th day of November 2021, upon consideration of Defendant Foster

Wheeler, LLC's *motion for summary judgment*, [ECF 226], Plaintiff's response in opposition,

[ECF 240], Defendant's reply, [ECF 282], Defendant's renewed motion, [ECF 330], Plaintiff's

opposition to the renewed motion, [ECF 342], Defendant's supplemental reply, [ECF 355],

Plaintiff's notice of supplemental authority, [ECF 384], and Defendant's reply to the supplemental

authority, [ECF 378], it is hereby **ORDERED** that Defendant's motion for summary judgment is

**DENIED**.[1]

---

[1]      Mr. William J. Boesenhofer ("Mr. Boesenhofer") commenced this product liability action against numerous defendants in the Court of Common Pleas of Philadelphia County on May 27, 2016, and he averred that his mesothelioma was caused by his exposures to numerous defendants' asbestos-containing products.  After Mr. Boesenhofer's death in August 2016, his complaint was amended to substitute Rose Diane Boesenhofer, his widow and the executrix of his estate, as Plaintiff, and the action was later removed to this Court in 2017.  In the amended complaint, Plaintiff alleges that the death of her husband, Mr. Boesenhofer, was caused by mesothelioma developed from exposure to numerous defendants' asbestos-containing products while working as a civilian employee at the Philadelphia Naval Shipyard (the "PNSY").  Specifically, Mr. Boesenhofer worked at the PNSY as a boilermaker mechanic from 1966 to 1978, as a ship systems boiler inspector from 1978 to 1986, and as a mechanical engineering technician from 1986 until his retirement in 1997.  Mr. Boesenhofer was diagnosed with mesothelioma on April 8, 2016 and passed away on August 20, 2016.

        Before this Court are numerous motions for summary judgment.  Instantly, in the motion for summary judgment filed by Foster Wheeler ("Defendant" or "Foster"), Foster argues that Plaintiff's evidence is insufficient:  (1) to establish that Mr. Boesenhofer was exposed to any product for which it is responsible or that Foster's product was a "substantial" cause of the illness at issue; or (2) to overcome the

government contractor and/or bare metal defenses.  Plaintiff disagrees and contends that she has produced
sufficient evidence as to each of these issues to survive summary judgment.

I.      *Summary Judgment Standard*

        Federal Rule of Civil Procedure ("Rule") 56 governs summary judgment motion practice.  Rule 56
requires a court to grant summary judgment if the movant shows that there is no genuine dispute as to any
material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  The movant
bears the initial burden of informing the court of the basis for the motion and identifying the portions of the
record that the movant "believes demonstrate the absence of a genuine issue of material fact."  *Celotex
Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A fact is "material" if its existence or non-existence would
affect the outcome of the suit under governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248
(1986).  An issue of fact is "genuine" when there is sufficient evidence from which a reasonable juror could
find in favor of the non-movant regarding the existence of that fact.  *Id.* at 248–49.  If the non-moving party
bears the burden of proof at trial, the movant can meet this burden by showing that the non-moving party
has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's
case."  *Celotex*, 477 U.S. at 322.

        After the movant meets its initial burden, summary judgment is appropriate if the non-
moving party fails to rebut the movant's claim by "citing to particular parts of materials in the
record, including depositions, documents, electronically stored information, affidavits or
declarations, stipulations . . . , admissions, interrogatory answers, or other materials" that show a
genuine issue of material fact or by "showing that the materials cited do not establish the absence
or presence of a genuine dispute."  *See* Fed. R. Civ. P. 56(c)(1)(A)–(B).  The non-movant must
"do more than simply show that there is some metaphysical doubt as to the material facts."
*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The non-movant
may not rely on "bare assertions, conclusory allegations or suspicions," *Fireman's Ins. Co. of
Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982), nor rest on the allegations in the pleadings.
*Celotex*, 477 U.S. at 324.  Rather, the non-movant must "go beyond the pleadings" and either by
affidavits, depositions, answers to interrogatories, or admissions on file "designate 'specific facts
showing that there is a genuine issue for trial.'"  *Id.*  "In considering the evidence, the court should
draw all reasonable inferences against the moving party."  *El v. SEPTA*, 479 F.3d 232, 238 (3d
Cir. 2007).

II.     *Applicable Law: Maritime Law v. State Law*

        In their respective briefs, the parties outline various aspects of maritime and Pennsylvania state
law.  Foster argues that maritime law applies, while Plaintiff fails to definitively stake out a position as to
which body of law applies.  The question of whether maritime law is applicable is a threshold dispute and
a question of federal law governed by the law of the circuit in which this Court sits.  *See* U.S. Const. Art.
III, § 2; 28 U.S.C. § 1333(1); *Various Plaintiffs v. Various Defendants*, 673 F. Supp. 2d 358, 362 (E.D. Pa.
2009).  In this circuit, courts apply the locality and connection tests in determining whether to apply
maritime law to a products liability claim.  *Conner v. Alfa Laval, Inc.*, 799 F. Supp. 2d 455, 463-66 (E.D.
Pa. 2011) (discussing *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534
(1995)).  In order for maritime law to apply, a plaintiff's exposure to the product must satisfy both the
locality and connection tests.  *Id.*

### A. Locality Test

The locality test requires that the alleged tort occurred on navigable waters or, for injuries suffered on land, that the injury was caused by a vessel on navigable waters. *Id.*  In assessing whether a tort occurred on "navigable waters" (*i.e.*, was sea-based), it is important to note that work performed aboard a ship that is docked at a shipyard is sea-based work and, thus, is work performed on navigable waters. *See Sisson v. Ruby,* 497 U.S. 358 (1990). This includes work aboard a ship that is in "dry dock." *See Deuber v. Asbestos Corp. Ltd.,* 2011 WL 6415339, at *1 n.1 (E.D. Pa. Dec. 2, 2011).  In contrast, work performed in other areas of a shipyard or on a dock is considered land-based work, not performed on navigable waters. *Id.*  If a plaintiff performed some work at a shipyard on land or on a dock itself, *and* some work onboard a ship docked at the shipyard, "the locality test is satisfied as long as *some portion* of the asbestos exposure occurred on a vessel on navigable waters." *Conner,* 799 F. Supp. 2d at 466; *Deuber,* 2011 WL 6415339, at *1 n.1 (emphasis added).  If, however, a plaintiff was never exposed to asbestos *onboard* a ship, then the locality test is not satisfied and maritime law will not apply.  Here, it is undisputed that Mr. Boesenhofer's alleged exposures (pertinent to Foster) occurred primarily aboard ships docked at the PNSY.  Therefore, the locality test is satisfied.

### B. Connection Test

The connection test requires that the alleged tort have "a potentially disruptive impact on maritime commerce" and that "'the general character' of the 'activity giving rise to the incident' shows a 'substantial relationship to traditional maritime activity.'" *Grubart,* 513 U.S. at 534 (citing *Sisson v. Ruby,* 497 U.S. 358, 364-65, n.2 (1990)).  When a plaintiff's claim satisfies the locality test, if the exposure was primarily sea-based/on navigable waters (as defined above), then the claim will satisfy the connection test. *Conner,* 799 F. Supp. 2d at 467-69.  In contrast, if the plaintiff's exposure was primarily land-based, then the claim will not satisfy the connection test. *Id.*  Where there are distinct periods of both types of exposure (*i.e.*, sea-based and land-based), a court may apply different laws to the different types of exposure (*e.g.*, apply maritime law to the sea-based exposure and state law to the land-based exposure). *See, e.g., Lewis v. Asbestos Corp., Ltd.,* 2011 WL 5881184, at *1 n.1 (E.D. Pa. Aug. 2, 2011) (applying Alabama state law to period of land-based exposure and maritime law to period of sea-based exposure).  Here, most of Mr. Boesenhofer's alleged exposures (pertinent to Foster) occurred on board ships docked at the PSNY. Therefore, the claims submitted on his behalf satisfy the connection test.

Because Plaintiff's claims against Foster satisfy both the locality test and the connection test, this Court finds that maritime law applies. *See Conner,* 799 F. Supp. 2d at 462-63.

III.     *Foster's Motion for Summary Judgment*

In its motion for summary judgment, Foster argues several grounds for judgment in its favor, which this Court will briefly address.

### A. Insufficient Evidence

Foster argues that Plaintiff's evidence is insufficient to establish that any product for which it is responsible was a "substantial" cause of Mr. Boesenhofer's mesothelioma.  Plaintiff disagrees and contends that she has identified sufficient product identification and causation evidence to survive summary judgment.

To establish causation for an asbestos claim under maritime law, a plaintiff must show that "(1) he was exposed to the defendant's product, and (2) the product was a substantial factor in causing the injury he suffered." *Lindstrom v. A-C Prod. Liab. Trust*, 424 F.3d 488, 492 (6th Cir. 2005), *abrogated on other grounds by Air and Liquid Systems Corp. v. DeVries*, — U.S. —, 139 S. Ct. 986, 994 (2019) (citing *Stark v. Armstrong World Indus., Inc.*, 21 F. App'x 371, 375 (6th Cir. 2001)). Substantial factor causation is determined separately for each defendant. *Stark*, 21 F. App'x at 375. Implicit in the test set forth in *Lindstrom* and *Stark* is the requirement that the plaintiff also show that the defendant manufactured or distributed the asbestos-containing product to which exposure is alleged. *Abbay v. Armstrong Int'l., Inc.*, 2012 WL 975837, at *1 n.1 (E.D. Pa. Feb. 29, 2012).

In establishing causation, a plaintiff may rely upon direct evidence and/or circumstantial evidence that supports an inference that the plaintiff was exposed to the defendant's product for some length of time. *Stark*, 21 F. App'x at 376 (quoting *Harbour v. Armstrong World Indus., Inc.*, 1991 WL 65201, at *4 (6th Cir. Apr. 25, 1991)). A mere "minimal exposure" to a defendant's product is insufficient to establish causation. *Lindstrom*, 424 F.3d at 492. "Likewise, a mere showing that defendant's product was present somewhere at plaintiff's place of work is insufficient." *Id.* Rather, the plaintiff must show "a high enough level of exposure that an inference that the asbestos was a substantial factor in the injury is more than conjectural." *Id.* (quoting *Harbour*, 1991 WL 65201, at *4). The exposure must have been "actual" or "real," but the question of "substantiality" is best left to the factfinder. *Redland Soccer Club, Inc. v. Dep't of Army of U.S.*, 55 F.3d 827, 851 (3d Cir. 1995).

To sustain her burden as to product identification and causation, Plaintiff cites to the following evidence:

> Deposition of Mr. Boesenhofer's Co-worker Daniel Cairns: From 1967 to 1972 and from 1976 to 1978, Mr. Cairns worked alongside Mr. Boesenhofer daily in the same boilermaker gang at the PNSY. From 1978 to 1986, Mr. Cairns worked alongside Mr. Boesenhofer every week as Mr. Boesenhofer inspected the work that Mr. Cairns and his crew performed. From 1986 until Mr. Boesenhofer's retirement in 1997, both Mr. Boesenhofer and Mr. Cairns worked together daily at PNSY's Naval Ship Systems Engineering Station as mechanical engineering technicians performing two-man boiler inspection and engineering jobs. Mr. Cairns testified that Mr. Boesenhofer completely dismantled and re-constructed multiple asbestos-containing Foster boilers aboard multiple Navy vessels docked at the PNSY. Mr. Boesenhofer also built two Foster boilers, in accordance with the direction of a Foster erector, on the USS Blue Ridge. Further, Mr. Boesenhofer removed and replaced asbestos-containing components on Foster economizers.

> Other Documentary Evidence: During the relevant time period, Foster manufactured and supplied the Navy with propulsion boilers that utilized asbestos-containing components. These Foster boilers were present on the Naval vessels on which Mr. Boesenhofer worked.

This evidence, viewed in the light most favorable to Plaintiff (the nonmovant), is sufficient to sustain her burden as to product identification and causation. When considering Defendant's argument and this evidence, a genuine issue of material fact exists with respect to Mr. Boesenhofer's exposure to respirable dust from asbestos-containing components utilized on the Foster boilers while working aboard various ships at the PNSY and with respect to whether Foster's asbestos-containing products were a substantial factor in causing Mr. Boesenhofer's mesothelioma, which ultimately caused his death. Accordingly, Foster's motion for summary judgment is denied on these issues.

B.  *Government Contractor Defense*

Foster argues that Plaintiff has failed to present evidence sufficient to overcome application of the government contractor defense.  Specifically, Foster argues that the undisputed evidence shows that the Navy exercised discretion and approved the warnings supplied by Foster for the products at issue, Foster provided warnings that conformed to the Navy's approved warnings, and the Navy knew about asbestos and its hazards. Plaintiff argues that summary judgment on grounds of the government contractor defense is not warranted because the Navy never precluded warnings about asbestos hazards and, instead, left the nature of warnings to the determination of manufacturers, with some explicit requirements that the manufacturer warn.

To satisfy the government contractor defense, a defendant must show that (1) the United States government approved reasonably precise specifications for the product at issue; (2) the equipment conformed to those specifications; and (3) the defendant warned the United States about the dangers in the use of the equipment that were known to it but not to the United States.  *Boyle v. United Technologies Corp.*, 487 U.S. 500, 512 (1988).  Courts applying *Boyle* to failure to warn cases have articulated three criteria necessary to establish the immunity defense, holding that it is established when "(1) the government exercised its discretion and approved certain warnings; (2) the contractor provided the warnings required by the government; [and] (3) the contractor warned the government about dangers in the equipment's use that were known to the contractor but not to the government."  *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 1003–04 (7th Cir. 1996); *see also Jowers v. Lincoln Electric Co.*, 617 F.3d 346, 352 (5th Cir. 2010); *Tate v. Boeing Helicopters*, 55 F.3d 1150, 1157 (6th Cir. 1995). When applied in the failure to warn context, the government need not prohibit the contractor from providing additional warnings; the defense applies so long as the government dictated or approved the warnings that the contractor actually provided.  *See Tate*, 55 F.3d at 1157 ("Government *discretion* is required, not dictation or prohibition of warnings").  Where "the government chooses its own warnings," rather than merely approves of a contractor's, it has "certainly" exercised the requisite discretion to support a colorable defense for the contractor. *Oliver*, 96 F.3d at 1004; *see also Tate*, 55 F.3d at 1157.

To sustain its burden on the government contractor defense, a defendant must show that the government "issued reasonably precise specifications covering warnings-specifications that reflect a considered judgment about the warnings at issue."  *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 783 (E.D. Pa. 2010) (citing *Holdren v. Buffalo Pumps, Inc.*, 614 F. Supp. 2d 129, 143 (D. Mass. 2009)); *Cuomo v. Crane Co.*, 771 F.3d 113, 117 (2d Cir. 2014) (no explicit mention of warnings is necessary).  Government approval of warnings must "transcend rubber stamping" to allow a defendant to be shielded from state law liability.  *Hagen*, 739 F. Supp. 2d at 783.  At the summary judgment stage, a defendant asserting the government contractor defense has the burden of showing the absence of a genuine dispute as to any material fact regarding whether it is entitled to the government contractor defense. *Various v. Various*, 856 F. Supp. 2d 703, 709-10 (E.D. Pa. 2012).  "Ordinarily, because of the standard applied at the summary judgment stage, defendants are not entitled to summary judgment pursuant to the government contractor defense." *Id.* at 710.

Here, this Court need look no further than the first and second prongs of *Boyle* to find material facts in dispute.  The parties have provided countervailing evidence as to the precision of military specifications for both design and obligation to warn.  Specifically, Plaintiff has pointed to evidence that contradicts (or at least appears to be inconsistent with) Foster's evidence as to whether the Navy did or did not exercise considered judgment over whether warnings could be included with Foster's products.  This evidence includes, *inter alia*, the expert report and testimony of Captain Arnold Moore, military specifications (including various iterations of MIL–M–15071), and other Department of Defense labeling requirements.

Plaintiff contends this evidence demonstrates that the Navy would have permitted Foster to include warnings with its products, and even expressly required warnings from such manufacturers, and that it left the discretion to warn largely to the manufacturers. This evidence is sufficient to raise genuine disputes of material fact as to whether the first and second prongs of the *Boyle* test are satisfied with respect to Foster. *See Willis*, 811 F. Supp. 2d 1146; *Salisbury v. Asbestos Corp. Ltd.*, 2014 WL 345214, at *1 n.1 (E.D. Pa. Jan. 29, 2014) (denying summary judgment on government contractor defense where plaintiff pointed to MIL-M-15071D); *Ferguson v. Air & Liquid Systems Corp.*, 2014 WL 7652953, at *1 n.1 (E.D. Pa. Dec. 3, 2014) (same); *In re Asbestos Litig.*, 2021 WL 3025842, at *9 (D. Del. July 16, 2021) (same), *report & recommendation adopted*, 2021 WL 3662847 (D. Del. Aug. 18, 2021). Accordingly, summary judgment on grounds of the government contractor defense is not warranted.

   C.  *Bare Metal Test*

        Foster next argues that it is entitled to summary judgment under the bare metal test, as reformulated by the United States Supreme Court in *Air & Liquid Sys. Corp. v DeVries*, 139 S. Ct. 986 (2019). Specifically, Foster argues that under the *DeVries* test, it owed no duty to warn Mr. Boesenhofer of the dangers of asbestos. Foster is mistaken. In *DeVries*, the Supreme Court articulated a new "tightly cabined" maritime bare metal test, holding that:

> In the maritime tort context, a product manufacturer has a duty to warn when (i) its product
> requires incorporation of a part, (ii) the manufacturer knows or has reason to know that the
> integrated product is likely to be dangerous for its intended uses, and (iii) the manufacturer
> has no reason to believe that the product's users will realize that danger.

*Id*. at 995.

        With respect to the first element, the *DeVries* Court provided examples of when a product "requires" incorporation of an asbestos part. These include when: "(i) a manufacturer directs that the part be incorporated," "(ii) a manufacturer itself makes the product with a part that the manufacturer knows will require replacement with a similar part," "or (iii) a product would be useless without the part." *Id*. at 995-96 (citations omitted). Though Foster argues that Plaintiff cannot establish any of these situations, this Court disagrees and finds that Plaintiff has presented evidence sufficient to create genuine issues of material fact as to this requirement. In particular, Plaintiff has presented evidence that Foster supplied the Navy with Foster-specified original and replacement asbestos-containing gaskets, packing, millboard, insulation, refractory, rope and other components with its boilers and specified the use of asbestos-containing replacement parts for its boiler. This evidence creates a genuine issue of material fact with respect to the first *DeVries* requirement.

        As to the second element of the bare metal test, whether Foster had reason to believe its boilers with the incorporation of asbestos-containing components were dangerous, a fact Foster disputes, this Court finds that Plaintiff has proffered evidence sufficient to raise a genuine dispute of material fact. In particular, Plaintiff has presented evidence showing knowledge, within the relevant industries and during the relevant time period, that asbestos posed a danger to those working in its vicinity. Plaintiff's proffered evidence suggests that Foster had actual and/or constructive knowledge of the dangers of asbestos exposure during the relevant time period. The record also suggests that using the Foster boilers as intended would have necessitated regular removal and replacement of asbestos-containing components. Further, the record

BY THE COURT:


/s/ Nitza I. Quiñones Alejandro
**NITZA I. QUIÑONES ALEJANDRO**
*Judge, United States District Court*

---

shows that Foster knew or should have known that doing maintenance work on the Foster's boilers would expose workers to asbestos dust. This evidence creates a genuine dispute of material fact with respect to the second element of the *DeVries* test.

Finally, as to the third element of the bare metal test, whether Foster had no reason to believe that users would realize the danger of using its products, record evidence is sufficient to create a genuine dispute of material fact. Foster contends that the evidence shows that it had every reason to believe that the Navy would inform users, such as Mr. Boesenhofer, of the dangers since it had a safety program in place related to asbestos during the relevant time period. Foster also points to other evidence, however, that shows that the Navy did not believe the use of asbestos-containing gaskets and packing with shipboard equipment posed a risk of harm to shipyard employees. This evidence creates a genuine issue of material fact as to whether Foster had reason to believe that the Navy would inform users as to the dangers of asbestos. *See Hammell*, 2020 WL 5107478, at *7 ("This alone is sufficient to create a genuine dispute of material fact because the Navy was not aware of the dangers of asbestos-containing gaskets in environments such as the shipyard where [the plaintiff's decedent] worked and Defendants had reason to know the Navy would not realize the dangers posed by their products when in shipyards."); *In re Asbestos Litig.*, 2021 WL 3025842, at *8 (D. Del. July 16, 2021), *report & recommendation adopted*, 2021 WL 3662847 (D. Del. Aug. 18, 2021) (denying Foster's motion for summary judgment premised on bare metal test). As such, Foster's motion for summary judgment based on the bare metal test argument is denied.

For the reasons set forth, Defendant's motion for summary judgment is denied in its entirety.

7

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WILLIAM BOESENHOFER,** *et al.* | : | **CIVIL ACTION** |
| *Plaintiffs* | : | |
| | : | **NO. 17-1072** |
| **v.** | : | |
| | : | |
| **AECOM,** *et al.* | : | |
| *Defendants* | : | |

## ORDER

**AND NOW**, this 26th day of November 2021, upon consideration of Defendant General

Electric Company's *motion for summary judgment*, [ECF 236], Plaintiff's response in opposition,

[ECF 254], Defendant's reply, [ECF 280], Defendant's renewed/supplemental motion, [ECF 315],

Plaintiff's opposition to the renewed motion, [ECF 339], Defendant's supplemental reply, [ECF

351], Plaintiff's notice of supplemental authority, [ECF 371], Defendant's notice of supplemental

authority, [ECF 382], and Plaintiff's notice of supplemental authority, [ECF 384], it is hereby

**ORDERED** that Defendant's motion for summary judgment is **DENIED**.[1]

---

[1]    Mr. William J. Boesenhofer ("Mr. Boesenhofer") commenced this product liability action against numerous defendants in the Court of Common Pleas of Philadelphia County on May 27, 2016, and averred that his mesothelioma was caused by his exposures to numerous defendants' asbestos-containing products. After Mr. Boesenhofer's death in August 2016, his complaint was amended to substitute Rose Diane Boesenhofer, his widow and the executrix of his estate, as Plaintiff, and the action was later removed to this Court in 2017. In the amended complaint, Plaintiff alleges that the death of her husband, Mr. Boesenhofer, was caused by mesothelioma developed from exposure to numerous defendants' asbestos-containing products while working as a civilian employee at the Philadelphia Naval Shipyard (the "PNSY"). Specifically, Mr. Boesenhofer worked at the PNSY as a boilermaker mechanic from 1966 to 1978, as a ship systems boiler inspector from 1978 to 1986, and as a mechanical engineering technician from 1986 until his retirement in 1997. Mr. Boesenhofer was diagnosed with mesothelioma on April 8, 2016 and passed away on August 20, 2016.

    Before this Court are numerous motions for summary judgment. In the instant motion for summary judgment filed by General Electric Company ("Defendant" or "GE"), GE argues that Plaintiff's evidence is insufficient: (1) to establish that Mr. Boesenhofer was exposed to any product for which it is responsible or that GE's product was a "substantial" cause of the illness at issue; or (2) to overcome the bare metal

and/or government contractor defenses.  Plaintiff disagrees and contends that she has produced sufficient evidence as to each of these issues to survive summary judgment.

I.    *Summary Judgment Standard*

Federal Rule of Civil Procedure ("Rule") 56 governs summary judgment motion practice.  Rule 56 requires a court to grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  The movant bears the initial burden of informing the court of the basis for the motion and identifying the portions of the record that the movant "believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A fact is "material" if its existence or non-existence would affect the outcome of the suit under governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of fact is "genuine" when there is sufficient evidence from which a reasonable juror could find in favor of the non-movant regarding the existence of that fact.  *Id.* at 248–49.  If the non-moving party bears the burden of proof at trial, the movant can meet this burden by showing that the non-moving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case."  *Celotex*, 477 U.S. at 322.

After the movant meets its initial burden, summary judgment is appropriate if the non-moving party fails to rebut the movant's claim by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" that show a genuine issue of material fact or by "showing that the materials cited do not establish the absence or presence of a genuine dispute."  *See* Fed. R. Civ. P. 56(c)(1)(A)–(B).  The non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The non-movant may not rely on "bare assertions, conclusory allegations or suspicions," *Fireman's Ins. Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982), nor rest on the allegations in the pleadings.  *Celotex*, 477 U.S. at 324.  Rather, the non-movant must "go beyond the pleadings" and either by affidavits, depositions, answers to interrogatories, or admissions on file "designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.*  "In considering the evidence, the court should draw all reasonable inferences against the moving party."  *El v. SEPTA*, 479 F.3d 232, 238 (3d Cir. 2007

II.    *Applicable Law: Maritime Law v. State Law*

In their respective briefs, the parties agree that Plaintiff's claims against GE are governed by maritime law, rather than Pennsylvania state substantive law, because Mr. Boesenhofer's alleged exposure(s) to GE's asbestos-containing products (turbines, draft blowers, and generators) occurred while Mr. Boesenhofer was aboard naval vessels docked at the PNSY.  This Court agrees and finds that the applicable "locality" and "connection" tests, confirm that maritime law applies to Plaintiff's claims against GE.  *See Conner v. Alfa Laval, Inc.*, 799 F. Supp. 2d 455, 463-66 (E.D. Pa. 2011) (discussing *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995)).

III.    *GE's Motion for Summary Judgment*

In its motion for summary judgment, GE argues several grounds for judgment in its favor, which this Court will briefly address.

2

### A.  Insufficient Evidence

GE argues that Plaintiff's evidence is insufficient to establish that any product for which it is responsible was a "substantial" cause of Mr. Boesenhofer's mesothelioma.  Plaintiff disagrees and contends that she has identified sufficient product identification and causation evidence to survive summary judgment.

To establish causation for an asbestos claim under maritime law, a plaintiff must show that "(1) he was exposed to the defendant's product, and (2) the product was a substantial factor in causing the injury he suffered." *Lindstrom v. A-C Prod. Liab. Trust*, 424 F.3d 488, 492 (6th Cir. 2005), *abrogated on other grounds by Air and Liquid Systems Corp. v. DeVries*, — U.S. —, 139 S. Ct. 986, 994 (2019) (citing *Stark v. Armstrong World Indus., Inc.*, 21 F. App'x 371, 375 (6th Cir. 2001)).  Substantial factor causation is determined separately for each defendant.  *Stark*, 21 F. App'x at 375.  Implicit in the test set forth in *Lindstrom* and *Stark* is the requirement that the plaintiff also show that the defendant manufactured or distributed the asbestos-containing product to which exposure is alleged.  *Abbay v. Armstrong Int'l., Inc.*, 2012 WL 975837, at *1 n.1 (E.D. Pa. Feb. 29, 2012).

In establishing causation, a plaintiff may rely upon direct evidence and/or circumstantial evidence that supports an inference that the plaintiff was exposed to the defendant's product for some length of time.  *Stark*, 21 F. App'x at 376 (quoting *Harbour v. Armstrong World Indus., Inc.*, 1991 WL 65201, at *4 (6th Cir. Apr. 25, 1991)).  A mere "minimal exposure" to a defendant's product is insufficient to establish causation.  *Lindstrom*, 424 F.3d at 492.  "Likewise, a mere showing that defendant's product was present somewhere at plaintiff's place of work is insufficient." *Id.*  Rather, the plaintiff must show "a high enough level of exposure that an inference that the asbestos was a substantial factor in the injury is more than conjectural." *Id.* (quoting *Harbour*, 1991 WL 65201, at *4).  The exposure must have been "actual" or "real," but the question of "substantiality" is best left to the factfinder.  *Redland Soccer Club, Inc. v. Dep't of Army of U.S.*, 55 F.3d 827, 851 (3d Cir. 1995).

To sustain her burden as to product identification and causation, Plaintiff cites to the following evidence:

Deposition of Mr. Boesenhofer's Co-worker Daniel Cairns:  From 1967 to 1972 and from 1976 to 1978, Mr. Cairns worked alongside Mr. Boesenhofer daily in the same boilermaker gang at the PNSY.  From 1978 to 1986, Mr. Cairns worked alongside Mr. Boesenhofer every week as Mr. Boesenhofer inspected the work that Mr. Cairns and his crew performed.  From 1986 until Mr. Boesenhofer's retirement in 1997, both Mr. Boesenhofer and Mr. Cairns worked together daily at PNSY's Naval Ship Systems Engineering Station as mechanical engineering technicians performing two-man boiler inspection and engineering jobs.  Mr. Cairns testified that Mr. Boesenhofer repaired and overhauled various ships' main engine turbines (including GE turbines), the exteriors of which were insulated with asbestos.  Mr. Boesenhofer also removed asbestos-containing gaskets inside the turbines using a scraper and/or wire brush.  He also installed forced draft blowers and was around other workers when they dismantled and overhauled various ships' turbine generators.

Other Documentary Evidence:  During the relevant time period, GE manufactured and supplied the Navy with turbines, forced draft blowers, and generators that utilized asbestos-containing components.  These GE turbines, forced draft blowers, and generators were present on the Naval vessels on which Mr. Boesenhofer worked, though it does not appear

that the products included asbestos-components when delivered by GE.  It is undisputed, however, that the GE products eventually utilized asbestos-containing components.

Notably, GE concedes that there "is evidence that Mr. Boesenhofer experienced asbestos exposure from insulation or gaskets or materials used in connection with GE's products."  (Def. Reply, ECF 289, at p. 4).

When considering GE's argument, this evidence viewed in the light most favorable to Plaintiff (the non-movant), creates a genuine issue of material fact with respect to Mr. Boesenhofer's exposure to respirable dust from asbestos-containing components utilized on the GE turbines, forced draft blowers, and generators while working aboard various ships at the PNSY and with respect to whether GE's asbestos-containing products were a substantial factor in causing Mr. Boesenhofer's mesothelioma.  Accordingly, GE's motion for summary judgment is denied on this argument.

*B.   Bare Metal Test*

GE also argues that it is entitled to summary judgment under the bare metal test, as reformulated by the United States Supreme Court in *Air & Liquid Sys. Corp. v DeVries*, 139 S. Ct. 986 (2019). Specifically, GE argues that under the *DeVries* test, it owed no duty to warn Mr. Boesenhofer of the dangers of asbestos.  GE is mistaken.  In *DeVries*, the Supreme Court articulated a new "tightly cabined" maritime bare metal test, holding that:

> In the maritime tort context, a product manufacturer has a duty to warn when (i) its product requires incorporation of a part, (ii) the manufacturer knows or has reason to know that the integrated product is likely to be dangerous for its intended uses, and (iii) the manufacturer has no reason to believe that the product's users will realize that danger.

*Id.* at 995.

With respect to the first element, the *DeVries* Court provided examples of when a product "requires" incorporation of an asbestos part.  These include when: "(i) a manufacturer directs that the part be incorporated," "(ii) a manufacturer itself makes the product with a part that the manufacturer knows will require replacement with a similar part," "or (iii) a product would be useless without the part." *Id.* at 995-96 (citations omitted).  Though GE argues that Plaintiff cannot establish any of these situations, this Court finds that Plaintiff has presented evidence sufficient to create genuine issues of material fact as to this requirement.  In particular, Plaintiff has presented evidence (primarily through its expert, Arnold P. Moore) that GE supplied the Navy with turbines, forced draft blowers, and generators that eventually incorporated various asbestos-containing components.  Plaintiff also cited to design drawings produced by GE that specified the incorporation of asbestos-containing parts (though GE disputes whether it, the Navy, or the Navy's builder originally specified incorporation of the parts).  This evidence supports an inference that GE was aware that the Navy would have to replace the asbestos-containing components and that the Navy would likely replace them with like asbestos-containing parts.  This evidence creates a genuine issue of material fact with respect to the first *DeVries* requirement.

As to the second element of the bare metal test, whether GE had reason to believe its turbines, forced draft blowers, and generators, with the incorporation of asbestos-containing components, were dangerous, this Court finds that Plaintiff has proffered evidence sufficient to raise a genuine dispute of material fact.  In particular, Plaintiff has presented evidence showing knowledge, within the relevant industries and during the relevant time period, that asbestos posed a danger to those working in its vicinity.

4

Plaintiff's proffered evidence suggests that GE had actual and/or constructive knowledge of the dangers of asbestos exposure during the relevant time period. The record also suggests that using the GE turbines, forced draft blowers, and generators, as intended would have necessitated regular removal and replacement of asbestos-containing components. Further, the record shows that GE knew or should have known that doing maintenance work on its products would expose workers to asbestos dust. This evidence creates a genuine dispute of material fact with respect to the second element of the *DeVries* test.

Finally, as to the third element of the bare metal test, whether GE had no reason to believe that users would realize the danger of using its products, record evidence is sufficient to create a genuine dispute of material fact. GE contends that the evidence shows that it had every reason to believe that the Navy would inform users, such as Mr. Boesenhofer, of the dangers since it had a safety program in place related to asbestos during the relevant time period. GE itself points to other evidence, however, that shows that the Navy did not believe the use of asbestos-containing gaskets and packing with shipboard equipment posed a risk of harm to shipyard employees. This evidence creates a genuine issue of material fact as to whether GE had reason to believe that the Navy would inform users as to the dangers of asbestos. *See Hammell v. Air & Liquid Systems Corp.*, 2020 WL 5107478, at *7 (D. N.J. Aug. 31, 2020) ("This alone is sufficient to create a genuine dispute of material fact because the Navy was not aware of the dangers of asbestos-containing gaskets in environments such as the shipyard where [the plaintiff's decedent] worked and Defendants had reason to know the Navy would not realize the dangers posed by their products when in shipyards."); *In re Asbestos Litig.*, 2021 WL 3025842, at *8 (D. Del. July 16, 2021), *report & recommendation adopted*, 2021 WL 3662847 (D. Del. Aug. 18, 2021) (denying motion for summary judgment premised on bare metal test). As such, GE's motion for summary judgment based on this argument is denied.

### C. Government Contractor Defense

Though not raised in its initial motion for summary judgment, GE argues in its renewed/supplemental motion that Plaintiff has failed to present evidence sufficient to overcome application of the government contractor defense. Specifically, GE argues that the undisputed evidence shows that the Navy exercised discretion and approved the warnings supplied by GE for the products at issue, GE provided warnings that conformed to the Navy's approved warnings, and the Navy knew about asbestos and its hazards. Plaintiff argues that summary judgment on grounds of the government contractor defense is not warranted because the Navy never precluded warnings about asbestos hazards, and, instead, specifications pertaining to warnings left the nature of warnings to the determination of manufacturers, with some explicit requirements that the manufacturer warn.

To satisfy the government contractor defense, a defendant must show that (1) the United States government approved reasonably precise specifications for the product at issue; (2) the equipment conformed to those specifications; and (3) the defendant warned the United States about the dangers in the use of the equipment that were known to it but not to the United States. *Boyle v. United Technologies Corp.*, 487 U.S. 500, 512 (1988). Courts applying *Boyle* to failure to warn cases have articulated three criteria necessary to establish the immunity defense, holding that it is established when "(1) the government exercised its discretion and approved certain warnings; (2) the contractor provided the warnings required by the government; [and] (3) the contractor warned the government about dangers in the equipment's use that were known to the contractor but not to the government." *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 1003–04 (7th Cir. 1996); *see also Jowers v. Lincoln Electric Co.*, 617 F.3d 346, 352 (5th Cir. 2010); *Tate v. Boeing Helicopters*, 55 F.3d 1150, 1157 (6th Cir. 1995). When applied in the failure to warn context, the government need not prohibit the contractor from providing additional warnings; the defense applies so

**BY THE COURT:**


/s/ Nitza I. Quiñones Alejandro
**NITZA I. QUIÑONES ALEJANDRO**
*Judge, United States District Court*

---

long as the government dictated or approved the warnings that the contractor actually provided. *See Tate*, 55 F.3d at 1157 ("Government *discretion* is required, not dictation or prohibition of warnings"). Where "the government chooses its own warnings," rather than merely approves of a contractor's, it has "certainly" exercised the requisite discretion to support a colorable defense for the contractor. *Oliver*, 96 F.3d at 1004; *see also Tate*, 55 F.3d at 1157.

To sustain its burden on the government contractor defense, a defendant must show that the Government "issued reasonably precise specifications covering warnings-specifications that reflect a considered judgment about the warnings at issue." *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 783 (E.D. Pa. 2010) (citing *Holdren v. Buffalo Pumps, Inc.*, 614 F. Supp. 2d 129, 143 (D. Mass. 2009)); *Cuomo v. Crane Co.*, 771 F.3d 113, 117 (2d Cir. 2014) (no explicit mention of warnings is necessary). Government approval of warnings must "transcend rubber stamping" to allow a defendant to be shielded from state law liability. *Hagen*, 739 F. Supp. 2d at 783. At the summary judgment stage, a defendant asserting the government contractor defense has the burden of showing the absence of a genuine dispute as to any material fact regarding whether it is entitled to the government contractor defense. *Various v. Various*, 856 F. Supp. 2d 703, 709-10 (E.D. Pa. 2012). "Ordinarily, because of the standard applied at the summary judgment stage, defendants are not entitled to summary judgment pursuant to the government contractor defense." *Id.* at 710.

Here, this Court need not look any further than the first and second prongs of *Boyle* to find material facts in dispute.   The parties have provided countervailing evidence as to the precision of military specifications for both design and obligation to warn.  Specifically, Plaintiff has pointed to evidence that contradicts (or at least appears to be inconsistent with) GE's evidence as to whether the Navy did or did not exercise considered judgment over whether warnings could be included with GE's products. Specifically, Plaintiff has identified the expert report and testimony of Captain Arnold Moore, military specifications (including various iterations of MIL–M–15071), and other Department of Defense labeling requirements. Plaintiff contends this evidence demonstrates that the Navy would have permitted GE to include warnings with its products, and even expressly required warnings from such manufacturers, and that it left the discretion to warn largely to the manufacturers.  This is sufficient to raise genuine disputes of material fact as to whether the first and second prongs of the *Boyle* test are satisfied with respect to GE.  *See Willis v. BW IP Intern. Inc.*, 811 F. Supp. 2d 1146, 1156 (E.D. Pa. 2011) (denying motion for summary judgment premised on government contractor defense); *Salisbury v. Asbestos Corp. Ltd.*, 2014 WL 345214, at *1 n.1 (E.D. Pa. Jan. 29, 2014) (denying summary judgment on government contractor defense where plaintiff pointed to MIL-M-15071D); *Ferguson v. Air & Liquid Systems Corp.*, 2014 WL 7652953, at *1 n.1 (E.D. Pa. Dec. 3, 2014) (same); *In re Asbestos Litig.*, 2021 WL 3025842, at *9 (D. Del. July 16, 2021) (same), *report & recommendation adopted*, 2021 WL 3662847 (D. Del. Aug. 18, 2021).  Accordingly, summary judgment on grounds of the government contractor defense is not warranted.

For the reasons set forth, GE's motion for summary judgment is denied, in its entirety.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WILLIAM BOESENHOFER**, *et al.* | : | **CIVIL ACTION** |
| *Plaintiffs* | : | |
| | : | **NO. 17-1072** |
| **v.** | : | |
| | : | |
| **AECOM**, *et al.* | : | |
| *Defendants* | : | |

## ORDER

**AND NOW**, this 17th day of December 2021, upon consideration of Defendant Warren Pumps, LLC's *motion for summary judgment*, [ECF 212], Plaintiff's response in opposition, [ECF 252], Defendant's reply, [ECF 286], Defendant's supplemental *motion for summary judgment*, [ECF 318], Plaintiff's opposition to the supplemental motion, [ECF 340], Defendant's supplemental reply, [ECF 350], and Plaintiff's notice of supplemental authority, [ECF 384], it is hereby **ORDERED** that Defendant's motions for summary judgment, [ECF 212, 318], are **DENIED**.[1]

---

[1]      Mr. William J. Boesenhofer ("Mr. Boesenhofer") commenced this product liability action against numerous defendants in the Court of Common Pleas of Philadelphia County on May 27, 2016, and averred that his mesothelioma was caused by his exposures to the defendants' asbestos-containing products. After Mr. Boesenhofer's death in August 2016, his complaint was amended to substitute Rose Diane Boesenhofer, his widow and the executrix of his estate, as Plaintiff. In 2017, this action was removed to this Court. In the amended complaint, Plaintiff alleges that the death of her husband, Mr. Boesenhofer, was caused by mesothelioma developed from exposure to numerous defendants' asbestos-containing products while working as a civilian employee at the Philadelphia Naval Shipyard (the "PNSY"). Specifically, Mr. Boesenhofer worked at the PNSY as a boilermaker mechanic from 1966 to 1978, as a ship systems boiler inspector from 1978 to 1986, and as a mechanical engineering technician from 1986 until his retirement in 1997. Mr. Boesenhofer was diagnosed with mesothelioma on April 8, 2016 and passed away on August 20, 2016.

Before this Court are numerous motions for summary judgment. In the instant motion for summary judgment filed by Warren Pumps, LLC ("Defendant" or "Warren"), Warren argues that Plaintiff's evidence is insufficient (1) to establish that Mr. Boesenhofer was exposed to any product for which it is responsible or that Warren's product was a "substantial" cause of the illness at issue or (2) to overcome the bare metal

defense/test.  Plaintiff disagrees and contends that she has produced sufficient evidence as to each of these issues to survive summary judgment.

*I.      Summary Judgment Standard*

Federal Rule of Civil Procedure ("Rule") 56 governs summary judgment motion practice.  Rule 56 requires a court to grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  The movant bears the initial burden of informing the court of the basis for the motion and identifying the portions of the record that the movant "believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A fact is "material" if its existence or non-existence would affect the outcome of the suit under governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of fact is "genuine" when there is sufficient evidence from which a reasonable juror could find in favor of the non-movant regarding the existence of that fact.  *Id.* at 248–49.  If the non-moving party bears the burden of proof at trial, the movant can meet this burden by showing that the non-moving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case."  *Celotex*, 477 U.S. at 322.

After the movant meets its initial burden, summary judgment is appropriate if the non-moving party fails to rebut the movant's claim by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" that show a genuine issue of material fact or by "showing that the materials cited do not establish the absence or presence of a genuine dispute."  *See* Fed. R. Civ. P. 56(c)(1)(A)–(B).  The non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The non-movant may not rely on "bare assertions, conclusory allegations or suspicions," *Fireman's Ins. Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982), or rest on the allegations in the pleadings.  *Celotex*, 477 U.S. at 324.  Rather, the non-movant must "go beyond the pleadings" and either by affidavits, depositions, answers to interrogatories, or admissions on file "designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.*  "In considering the evidence, the court should draw all reasonable inferences against the moving party."  *El v. SEPTA*, 479 F.3d 232, 238 (3d Cir. 2007).

II.      *Applicable Law: Maritime Law v. State Law*

In their respective briefs, the parties agree that Plaintiff's claims against Warren are governed by maritime law rather than Pennsylvania state substantive law because Mr. Boesenhofer's alleged exposure(s) to Warren's asbestos-containing products (pumps) occurred primarily while Mr. Boesenhofer was aboard naval vessels docked at the PNSY.  This Court agrees and finds that the applicable "locality" and "connection" tests confirm that maritime law applies to Plaintiff's claims against Warren.  *See Conner v. Alfa Laval, Inc.*, 799 F. Supp. 2d 455, 463–66 (E.D. Pa. 2011) (discussing *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995)).

III.      *Warren's Motion for Summary Judgment*

In its motion for summary judgment, Warren argues several grounds for judgment in its favor, which this Court will briefly address.

*A. Insufficient Evidence*

Warren argues that Plaintiff's evidence is insufficient to establish that any product for which it is responsible was a "substantial" cause of Mr. Boesenhofer's mesothelioma.  Plaintiff disagrees and contends that she has identified sufficient product identification and causation evidence to survive summary judgment.

To establish causation for an asbestos claim under maritime law, a plaintiff must show that "(1) he was exposed to the defendant's product, and (2) the product was a substantial factor in causing the injury he suffered."  *Lindstrom v. A-C Prod. Liab. Tr.*, 424 F.3d 488, 492 (6th Cir. 2005), *abrogated on other grounds by Air and Liquid Sys. Corp. v. DeVries*, — U.S. —, 139 S. Ct. 986, 994 (2019) (citing *Stark v. Armstrong World Indus., Inc.*, 21 F. App'x 371, 375 (6th Cir. 2001)).  Substantial factor causation is determined separately for each defendant.  *Stark*, 21 F. App'x at 375.  Implicit in the test set forth in *Lindstrom* and *Stark* is the requirement that a plaintiff also show that the defendant manufactured or distributed the asbestos-containing product to which a plaintiff alleges exposure.  *Abbay v. Armstrong Int'l., Inc.*, 2012 WL 975837, at *1 n.1 (E.D. Pa. Feb. 29, 2012).

In establishing causation, a plaintiff may rely upon direct evidence and/or circumstantial evidence that supports an inference that the plaintiff was exposed to the defendant's product for some length of time.  *Stark*, 21 F. App'x at 376 (quoting *Harbour v. Armstrong World Indus., Inc.*, 1991 WL 65201, at *4 (6th Cir. Apr. 25, 1991)).  A mere "minimal exposure" to a defendant's product is insufficient to establish causation.  *Lindstrom*, 424 F.3d at 492.  "Likewise, a mere showing that defendant's product was present somewhere at plaintiff's place of work is insufficient."  *Id.*  Rather, the plaintiff must show "a high enough level of exposure that an inference that the asbestos was a substantial factor in the injury is more than conjectural."  *Id.* (quoting *Harbour*, 1991 WL 65201, at *4).  The exposure must have been "actual" or "real," but the question of "substantiality" is best left to the factfinder.  *Redland Soccer Club, Inc. v. Dep't of Army of U.S.*, 55 F.3d 827, 851 (3d Cir. 1995).

To sustain her burden as to product identification and causation, Plaintiff cites to the following evidence:

Deposition of Mr. Boesenhofer's Co-worker Daniel Cairns:  From 1967 to 1972 and from 1976 to 1978, Mr. Cairns worked alongside Mr. Boesenhofer daily in the same boilermaker gang at the PNSY.  From 1978 to 1986, Mr. Cairns worked alongside Mr. Boesenhofer every week as Mr. Boesenhofer inspected the work that Mr. Cairns and his crew performed.  From 1986 until Mr. Boesenhofer's retirement in 1997, Mr. Boesenhofer and Mr. Cairns worked together daily at PNSY's Naval Ship Systems Engineering Station as mechanical engineering technicians performing two-man boiler inspection and engineering jobs.  Mr. Cairns testified that while Mr. Boesenhofer performed boiler work aboard various Naval ships, including the USS Dewey, USS Fox, and USS Sperry, other tradesmen dismantled and overhauled those ships' pumps, a process that created visible dust.

Other Documentary Evidence:  During the relevant time period, Warren manufactured and supplied the Navy with pumps to be located inside the boiler rooms of the USS Dewey, USS Fox, and USS Sperry.  These pumps contained asbestos packing and gaskets and were insulated with asbestos-containing insulation.  Warren also sold the replacement asbestos-containing packing and gaskets, and continued to use them until the 1980s.

3

When considering Warren's arguments, this evidence, viewed in the light most favorable to Plaintiff (the non-movant), creates a genuine issue of material fact with respect to Mr. Boesenhofer's exposure to respirable dust particles from asbestos-containing components utilized on the Warren pumps while working aboard various ships at the PNSY and with respect to whether Warren's asbestos-containing products were a substantial factor in causing Mr. Boesenhofer's mesothelioma. Accordingly, Warren's motion for summary judgment is denied in this respect.

### B.  Bare Metal Test

Warren next baldly argues that it is entitled to summary judgment under the bare metal test, as reformulated by the United States Supreme Court in *Air & Liquid Sys. Corp. v DeVries*, 139 S. Ct. 986 (2019). Specifically, Warren argues that under the *DeVries* test, it owed no duty to warn Mr. Boesenhofer of the dangers of asbestos. Warren is mistaken. In *DeVries*, the Supreme Court articulated a new "tightly cabined" maritime bare metal test:

> In the maritime tort context, a product manufacturer has a duty to warn when (i) its product requires incorporation of a part, (ii) the manufacturer knows or has reason to know that the integrated product is likely to be dangerous for its intended uses, and (iii) the manufacturer has no reason to believe that the product's users will realize that danger.

*Id.* at 995. With respect to the first element, the *DeVries* Court provided examples of when a product "requires" incorporation of an asbestos part, including when: "(i) a manufacturer directs that the part be incorporated," "(ii) a manufacturer itself makes the product with a part that the manufacturer knows will require replacement with a similar part," "or (iii) a product would be useless without the part." *Id.* at 995–96 (citations omitted).

Notably, apart from asserting in conclusory fashion that no evidence exists to support these requirements, Warren provides no substantive argument. Regardless, this Court finds that Plaintiff has presented evidence sufficient to create genuine issues of material fact as to these requirements. In particular, Plaintiff has presented evidence that Warren supplied the Navy with pumps that utilized asbestos-containing gaskets and packing and, further, specified the use of asbestos-containing replacement parts with its pumps. This evidence creates a genuine issue of material fact with respect to the first *DeVries* requirement.

As to the second element of the bare metal test—whether Warren had reason to believe its pumps, with the incorporation of asbestos-containing components, were dangerous—this Court finds that Plaintiff has proffered evidence sufficient to raise a genuine dispute of material fact. In particular, Plaintiff has presented evidence showing knowledge, within the relevant industries and during the relevant time period, that asbestos posed a danger to those working in its vicinity. Plaintiff's proffered evidence suggests that Warren had actual and/or constructive knowledge of the dangers of asbestos exposure during the relevant time period. The record also suggests that the use of the Warren pumps as intended would have necessitated regular removal and replacement of asbestos-containing components. Further, the record shows that Warren knew or should have known that doing maintenance work on Warren's pumps would expose workers to asbestos dust particles. This evidence creates a genuine dispute of material fact with respect to the second element of the *DeVries* test.

Finally, as to the third element of the bare metal test—whether Warren had no reason to believe that users would realize the danger of using its products— record evidence is sufficient to create a genuine dispute of material fact. Record evidence shows that the Navy did not believe the use of asbestos-containing gaskets and packing with shipboard equipment posed a risk of harm to shipyard employees. This evidence

**BY THE COURT:**


/s/ Nitza I. Quiñones Alejandro
**NITZA I. QUIÑONES ALEJANDRO**
*Judge, United States District Court*

---

creates a genuine issue of material fact as to whether Warren had reason to believe that the Navy would inform users as to the dangers of asbestos. *See Hammell*, 2020 WL 5107478, at *7 ("This alone is sufficient to create a genuine dispute of material fact because the Navy was not aware of the dangers of asbestos-containing gaskets in environments such as the shipyard where [the plaintiff's decedent] worked and Defendants had reason to know the Navy would not realize the dangers posed by their products when in shipyards."); *In re Asbestos Litig.*, 2021 WL 3025842, at *8 (D. Del. July 16, 2021), *report & recommendation adopted*, 2021 WL 3662847 (D. Del. Aug. 18, 2021) (denying motion for summary judgment premised on bare metal test). As such, Warren's motion for summary judgment based on the bare metal test argument is denied.

For all the reasons set forth, Warren's motion for summary judgment is denied in its entirety.

# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN B. DEVRIES, ET AL. | : | CONSOLIDATED UNDER |
| | : | MDL 875 |
| v. | : | |
| | : | |
| GENERAL ELECTRIC COMPANY, | : | E.D. PA CIVIL ACTION NO. |
| ET AL. | : | 5:13-00474-ER |
| | : | |

**O R D E R**

**AND NOW**, this **24th** day of **May, 2021**, upon

consideration of the motion for summary judgment filed by Foster

Wheeler, LLC (ECF No. 397) and the response and reply thereto,

it is hereby **ORDERED** that motion is **DENIED.**[1]

---

[1]        This asbestos injury case was removed in January 2013
from the Philadelphia Court of Common Pleas and added to MDL-
875.

**I.    Background**

        Plaintiff alleges that he was exposed to asbestos
while serving in the United States Navy between 1957 and 1960 on
the U.S.S. Turner, a Gearing class destroyer. As an officer,
Plaintiff oversaw engineering personnel who performed a wide
range of maintenance on, and repair of, the vessel's mechanical
systems. Among other things, Plaintiff supervised while his
subordinates worked on two condensers in the boiler room.
Plaintiff alleges that those condensers were manufactured by
Foster Wheeler and contained asbestos gaskets and seals to which
Plaintiff was exposed. Plaintiff claims that this exposure
caused his asbestos-related injury.

        On October 10, 2014, this Court granted summary
judgment in Foster Wheeler's favor after finding that Foster
Wheeler was not liable in light of the "bare metal" defense,
holding that a manufacturer is not responsible for asbestos
parts not provided by that manufacturer. Plaintiff appealed the
decision and, ultimately, the Supreme Court remanded the case

after announcing a new test for the bare metal defense under
maritime law. See Air & Liquid Sys. Corp. v. DeVries, 139 S. Ct.
986 (2019). Foster Wheeler has now filed a renewed motion for
summary judgment alleging a lack of causation and asserting the
bare metal defense.

## II.   STANDARDS

As this Court has held in the past, and as recognized
by the Supreme Court in Devries, 139 S. Ct. at 993, maritime law
applies to this action because both the locality and connection
tests are met given that Plaintiff's alleged exposure occurred
during his service on board a Navy vessel. See Conner v. Alfa
Laval, Inc., 799 F. Supp. 2d 455, 463-469 (E.D. Pa. 2011).

In Conner, this Court outlined the requirements for
establishing causation under maritime law. A plaintiff must
show: "(1) that the plaintiff was exposed to the defendant's
product and (2) that the product was a substantial factor in
causing the plaintiff's injury." 842 F. Supp.2d at 797. Whether
a product was a substantial factor is typically a question for
the fact finder. Walker v. Blackmer Pump Co., 367 F. Supp. 3d
360, 375 (E.D. Pa. 2020).

The Supreme Court in DeVries, in announcing the new
bare metal test, held that:

> In the maritime tort context, a product manufacturer has
> a duty to warn when (i) its product requires
> incorporation of a part, (ii) the manufacturer knows or
> has reason to know that the integrated product is likely
> to be dangerous for its intended uses, and (iii) the
> manufacturer has no reason to believe that the product's
> users will realize that danger.

139 S. Ct. at 995.

Summary judgment is appropriate if there is no genuine
dispute as to any material fact and the moving party is entitled
to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is
"material" if proof of its existence or non-existence might
affect the outcome of the litigation, and a dispute is "genuine"
if "the evidence is such that a reasonable jury could return a
verdict for the nonmoving party." Anderson v. Liberty Lobby, 477
U.S. 242, 248 (1986); see Scott v. Harris, 550 U.S. 372, 380
(2007). The mere existence of some disputed facts will not

2

overcome a motion for summary judgment. Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson, 477 U.S. 247-48).

While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the nonmoving party who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250. In undertaking this analysis, the Court must view all facts in the light most favorable to the nonmoving party. Scott, 550 U.S. at 380.

## III. DISCUSSION

The Court concludes that genuine disputes of material fact pervade the challenged claims, prohibiting summary judgment in favor of Foster Wheeler.

Foster Wheeler first argues that Plaintiff has failed to establish causation because Foster Wheeler did not make the condensers at issue. It claims that the serial numbers on the condensers indicate that they were manufactured by Worthington Pump and Machinery Corp. and not by Foster Wheeler. See ECF No. 397 Exhs. C & D. Plaintiff responds with an inspection report and a work request form providing that the condensers were manufactured by Foster Wheeler. See ECF No. 406 Exhs. D & E. In light of the competing evidence, and viewing it in the light most favorable to Plaintiff, the Court concludes there is a genuine dispute as to the material fact of who manufactured the condensers.

Foster Wheeler also argues that Plaintiff has failed to establish that exposure to asbestos in the condensers was a substantial factor in causing his injury because he testified that he did not personally replace the gaskets and seals. However, viewing any arguably ambiguous testimony in the light most favorable to Plaintiff, Plaintiff establishes that he once worked inside a condenser, that he was "right on top of it" when seals in the condenser pipes were scraped and replaced, and that he believed from his training that the seals contained asbestos. The Court concludes that whether exposure to the gaskets and seals in the condensers was a substantial factor in causing DeVries' injury is a fact question for the jury.

Second, Foster Wheeler argues that, under the DeVries bare metal test, it owed no duty to warn DeVries of the dangers

**AND IT IS SO ORDERED.**

/s/ Eduardo C. Robreno
**EDUARDO C. ROBRENO, J.**

of asbestos. However, the Court concludes that fact questions
prevent summary judgment on this ground.

Regarding the first prong of the bare metal test, the
Supreme Court in DeVries provided examples of when a product
requires an asbestos part including when: "(i) a manufacturer
directs that the part be incorporated;" "(ii) a manufacturer
itself makes the product with a part that the manufacturer knows
will require replacement with a similar part;" "or (iii) a
product would be useless without the part." 139 S. Ct. at 995-96
(citations omitted). Foster Wheeler argues that Plaintiff cannot
establish any of these situations. However, the Court concludes
that there are genuine disputes as to material facts concerning
whether the condensers on the Turner were manufactured by Foster
Wheeler and, if so, whether Foster Wheeler sold its pumps with
asbestos-containing gaskets and seals and knew they would be
replaced with similar parts.

Regarding the second and third prongs of the bare
metal test, whether Foster Wheeler had reason to believe its
condensers were dangerous and whether it had no reason to believe
the condensers' users would realize that danger, the Court
concludes that while some of Plaintiff's evidence, including
what other manufactures might have known, is irrelevant and
other evidence is misleading in that it does not support the
propositions for which it was offered, there is sufficient
conflicting evidence about what party had what knowledge
regarding the dangers of asbestos gaskets and seals during the
relevant time that summary judgment is inappropriate.

4

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN B. DEVRIES, ET AL. | : | CONSOLIDATED UNDER |
| | : | MDL 875 |
| v. | : | |
| | : | |
| GENERAL ELECTRIC COMPANY, | : | E.D. PA CIVIL ACTION NO. |
| ET AL. | : | 5:13-00474-ER |
| | : | |

O R D E R

AND NOW, this **26th** day of **March, 2021,** upon

consideration of the motion for summary judgment filed by Air &

Liquid Systems Corporation, as successor by merger to Buffalo

Pumps, Inc. ("Buffalo") (ECF No. 398) and the response and reply

thereto, it is hereby **ORDERED** that motion is **GRANTED in part** and

**DENIED in part.**[1] The motion is **GRANTED** in that Plaintiff's claim

---

[1]      This asbestos injury case was removed in January 2013
from the Philadelphia Court of Common Pleas and added to MDL-
875.

I.    **Background**

     Plaintiff alleges that he was exposed to asbestos
while serving in the United States Navy between 1957 and 1960 on
the U.S.S. Turner, a Gearing class destroyer. As an officer,
Plaintiff oversaw engineering personnel who performed a wide
range of maintenance on, and repair of, the vessel's mechanical
systems. Among other things, Plaintiff supervised while his
subordinates worked on various pumps including while they
changed the gaskets and packing in the pumps. Defendant Buffalo
manufactured at least fourteen of the pumps that were used on
the Turner. Plaintiff claims that exposure to asbestos in the
Buffalo pumps caused his asbestos-related injury.

     On October 1, 2014, this Court granted summary
judgment in Buffalo's favor after finding that Buffalo was not

liable in light of the "bare metal" defense, holding that a manufacturer was not responsible for asbestos parts not provided by that manufacturer. Plaintiff appealed the decision and, ultimately, the Supreme Court remanded the case after announcing a new test for the bare metal defense under maritime law. See Air & Liquid Sys. Corp. v. DeVries, 139 S. Ct. 986 (2019). Buffalo has now filed a renewed motion for summary judgment alleging a lack of causation and asserting the bare metal defense and the government contractors' defense. Buffalo also contends that Plaintiff is not entitled to punitive damages under maritime law.

## II.   STANDARDS

As this Court has held in the past, and as recognized by the Supreme Court in Devries, 139 S. Ct. at 993, maritime law applies to this action because both the locality and connection tests are met given that Plaintiff's alleged exposure occurred during his service on board a Navy vessel. See Conner v. Alfa Laval, Inc., 799 F. Supp. 2d 455, 463-469 (E.D. Pa. 2011).

In Conner, this Court outlined the requirements for establishing causation under maritime law. A plaintiff must show: "(1) that the plaintiff was exposed to the defendant's product and (2) that the product was a substantial factor in causing the plaintiff's injury." 842 F. Supp.2d at 797. Whether a product was a substantial factor is typically a question for the fact finder. Walker v. Blackmer Pump Co., 367 F. Supp. 3d 360, 375 (E.D. Pa. 2020).

The Supreme Court in DeVries, in announcing the new bare metal test, held that:

> In the maritime tort context, a product manufacturer has a duty to warn when (i) its product requires incorporation of a part, (ii) the manufacturer knows or has reason to know that the integrated product is likely to be dangerous for its intended uses, and (iii) the manufacturer has no reason to believe that the product's users will realize that danger.

139 S. Ct. at 995.

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is

"material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); see Scott v. Harris, 550 U.S. 372, 380 (2007). The mere existence of some disputed facts will not overcome a motion for summary judgment. Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson, 477 U.S. at 247-48).

        While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the nonmoving party who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250. In undertaking this analysis, the Court must view all facts in the light most favorable to the nonmoving party. Scott, 550 U.S. at 380.

## III. DISCUSSION

        The Court concludes that genuine disputes of material fact largely pervade the challenged claims, prohibiting summary judgment in favor of Buffalo on all grounds except for Plaintiff's claim of punitive damages.

        Buffalo first argues that Plaintiff has failed to establish causation because there is insufficient evidence that DeVries was exposed to asbestos in its pumps. See Lindstrom v. A-C Prod. Liab. Tr., 424 F.3d 488, 492 (6th Cir. 2005), abrogated on other grounds by DeVries, 139 S. Ct. 986 (providing that "'[m]inimal exposure' to a defendant's product is insufficient," and instead, a plaintiff must show "a high enough level of exposure that an inference that the asbestos was a substantial factor in the injury is more than conjectural") (quoting Stark v. Armstrong World Indus., Inc., 21 Fed. Appx. 371, 375 (6th Cir. 2001)). Buffalo contends that because DeVries was unable to describe specific instances when he oversaw work on Buffalo pumps, he has failed to establish that he was exposed to asbestos parts in Buffalo pumps. Buffalo does not argue that the pumps lacked asbestos parts.

        The evidence establishes that there were at least fourteen Buffalo pumps on the Turner and that part of DeVries' job was to oversee maintenance on those pumps, including the regular replacement of potentially asbestos-containing gaskets and packing. While DeVries could not recall specific times that

he oversaw work on Buffalo pumps, he testified that he was
present for so many pump repackings that he must have worked on
the Buffalo pumps along with the other pumps on the vessel. The
Court concludes that, under these particular circumstances,
viewing the evidence in the light most favorable to Plaintiff,
there is a genuine dispute as to material facts regarding
DeVries' level of exposure to potentially asbestos-containing
parts within Buffalo pumps. Likewise, the Court concludes that,
under these circumstances, whether that exposure was a
substantial factor in causing DeVries' injury is a fact question
for the jury.

Second, Buffalo argues that, under the DeVries bare
metal test, it owed no duty to warn DeVries of the dangers of
asbestos. Specifically, Buffalo claims that Plaintiff has failed
to establish the second step of the test, that Buffalo knew or
had reason to know that its integrated product was likely to be
dangerous. See DeVries, 139 S. Ct. at 995. The Court concludes
that while some of Plaintiff's evidence, including what other
manufactures might have known, is irrelevant and other evidence
is misleading in that it does not support the propositions for
which it was offered, there is sufficient conflicting evidence
about what Buffalo had reason to know regarding the dangers of
asbestos packing and gaskets that summary judgment is
inappropriate.

Third, Buffalo contends that it is protected by the
government contractor defense. Government contractors, which
Buffalo alleges it is, are immune from tort claims when: "(1)
the United States approved reasonably precise specifications;
(2) the equipment conformed to those specifications; and (3) the
supplier warned the United States about the dangers in the use
of the equipment that were known to the supplier but not to the
United States." Boyle v. United Techs. Corp., 487 U.S. 500, 512
(1988). In the past, the Court has concluded that this inquiry
is fraught with factual issues preventing summary judgment. See,
e.g., Willis v. BW IP Int'l Inc., 811 F. Supp. 2d 1146 (E.D. Pa.
2011). Under these specific circumstances, and given the
evidence presented in this case, the Court so finds again and
cannot grant summary judgment on this basis.

Fourth, Buffalo claims that Plaintiff's punitive
damages claim is not cognizable under maritime law and, even if
it was, Plaintiff has failed to show willful, wanton, grossly,
negligent, or unconscionable behavior by Buffalo. Plaintiff
responds that punitive damages should be available under

4

for punitive damages against Buffalo is **DISMISSED**. The motion is

**DENIED** in all other respects.

              **AND IT IS SO ORDERED.**

_Eduardo C. Robreno_
_____
**EDUARDO C. ROBRENO, J.**

---

maritime law and that, regardless, state law allows punitive
damages.

      As described above, DeVries' claims are controlled by
maritime law, not state law. The Supreme Court has allowed
punitive damages under maritime law for personal injury claims
only within the context of maintenance and cure because punitive
damages were traditionally recoverable under that theory of
liability. The Dutra Grp. v. Batterton, 139 S. Ct. 2275, 2283
(2019) ("In Atlantic Sounding, we allowed recovery of punitive
damages, but we justified our departure from the statutory
remedial scheme based on the established history of awarding
punitive damages for certain maritime torts, including
maintenance and cure.) (citing Atl. Sounding Co. v. Townsend,
557 U.S. 404, 411-15 (2009)). The Court is unaware of any
historical precedents that would justify allowing punitive
damage claims under maritime law for products liability claims
such as those made by Plaintiff. Therefore, the Court will
dismiss Plaintiff's punitive damages claim against Buffalo and
will grant this aspect only of its motion.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOHN B. DEVRIES, ET AL.          :      CONSOLIDATED UNDER
                                 :      MDL 875
        v.                       :
                                 :
GENERAL ELECTRIC COMPANY,        :      E.D. PA CIVIL ACTION NO.
ET AL.                           :      5:13-00474-ER
                                 :

**O R D E R**

**AND NOW**, this **26th** day of **March, 2021**, upon

consideration of the motion for summary judgment filed by Warren

Pumps ("Warren") (ECF No. 399) and the response and reply

thereto, it is hereby **ORDERED** that motion is **DENIED.**[1]

---

[1]      This asbestos injury case was removed in January 2013
from the Philadelphia Court of Common Pleas and added to MDL-
875.

## I.   Background

        Plaintiff alleges that he was exposed to asbestos
while serving in the United States Navy between 1957 and 1960 on
the U.S.S. Turner, a Gearing class destroyer. As an officer,
Plaintiff oversaw engineering personnel who performed a wide
range of maintenance on, and repair of, the vessel's mechanical
systems. Among other things, Plaintiff supervised while his
subordinates worked on various pumps including while they
changed the gaskets and packing in the pumps. Defendant Warren
manufactured some of the pumps that were used on the Turner.
Plaintiff claims that exposure to asbestos in the Warren pumps
caused his asbestos-related injury.

        On October 1, 2014, this Court granted summary
judgment in Warren's favor after finding that Warren was not
liable in light of the "bare metal" defense, holding that a
manufacturer is not responsible for asbestos parts not provided
by that manufacturer. Plaintiff appealed the decision and,
ultimately, the Supreme Court remanded the case after announcing

a new test for the bare metal defense under maritime law. See
Air & Liquid Sys. Corp. v. DeVries, 139 S. Ct. 986 (2019).
Warren has now filed a renewed motion for summary judgment
alleging a lack of causation and asserting the bare metal
defense and the government contractors' defense.

## II.   STANDARDS

As this Court has held in the past, and as recognized
by the Supreme Court in Devries, 139 S. Ct. at 993, maritime law
applies to this action because both the locality and connection
tests are met given that Plaintiff's alleged exposure occurred
during his service on board a Navy vessel. See Conner v. Alfa
Laval, Inc., 799 F. Supp. 2d 455, 463-469 (E.D. Pa. 2011).

In Conner, this Court outlined the requirements for
establishing causation under maritime law. A plaintiff must
show: "(1) that the plaintiff was exposed to the defendant's
product and (2) that the product was a substantial factor in
causing the plaintiff's injury." 842 F. Supp.2d at 797. Whether
a product was a substantial factor is typically a question for
the fact finder. Walker v. Blackmer Pump Co., 367 F. Supp. 3d
360, 375 (E.D. Pa. 2020).

The Supreme Court in DeVries, in announcing the new
bare metal test, held that:

> In the maritime tort context, a product manufacturer has
> a duty to warn when (i) its product requires
> incorporation of a part, (ii) the manufacturer knows or
> has reason to know that the integrated product is likely
> to be dangerous for its intended uses, and (iii) the
> manufacturer has no reason to believe that the product's
> users will realize that danger.

139 S. Ct. at 995.

Summary judgment is appropriate if there is no genuine
dispute as to any material fact and the moving party is entitled
to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is
"material" if proof of its existence or non-existence might
affect the outcome of the litigation, and a dispute is "genuine"
if "the evidence is such that a reasonable jury could return a
verdict for the nonmoving party." Anderson v. Liberty Lobby, 477
U.S. 242, 248 (1986); see Scott v. Harris, 550 U.S. 372, 380
(2007). The mere existence of some disputed facts will not

overcome a motion for summary judgment. <u>Am. Eagle Outfitters v.
Lyle & Scott Ltd.</u>, 584 F.3d 575, 581 (3d Cir. 2009) (quoting
<u>Anderson</u>, 477 U.S. at 247-48).

While the moving party bears the initial burden of
showing the absence of a genuine issue of material fact, meeting
this obligation shifts the burden to the nonmoving party who
must "set forth specific facts showing that there is a genuine
issue for trial." <u>Anderson</u>, 477 U.S. at 250. In undertaking this
analysis, the Court must view all facts in the light most
favorable to the nonmoving party. <u>Scott</u>, 550 U.S. at 380.

## III. DISCUSSION

The Court concludes that genuine disputes of material
fact pervade the challenged claims, prohibiting summary judgment
in favor of Warren.

Warren first argues that Plaintiff has failed to
establish causation because there is insufficient evidence that
DeVries was exposed to asbestos in its pumps. <u>See Lindstrom v.
A-C Prod. Liab. Tr.</u>, 424 F.3d 488, 492 (6th Cir. 2005),
<u>abrogated on other grounds by DeVries</u>, 139 S. Ct. 986 (providing
that "'[m]inimal exposure' to a defendant's product is
insufficient," and instead, a plaintiff must show "a high enough
level of exposure that an inference that the asbestos was a
substantial factor in the injury is more than conjectural")
(quoting <u>Stark v. Armstrong World Indus., Inc.</u>, 21 Fed. Appx.
371, 375 (6th Cir. 2001)). Warren contends that DeVries'
testimony regarding his exposure to Warren pumps is overly vague
and generalized with the exception of his specific recollection
of one instance where he oversaw a Warren pump being repacked.
Warren contends that this single instance is insufficient to
show more than minimal exposure to asbestos in its pumps. Warren
does not argue that the pumps lacked asbestos parts.

The evidence establishes that there were a significant
number of Warren pumps aboard the Turner and that part of
DeVries' job was to oversee maintenance on those pumps,
including the regular replacement of potentially asbestos-
containing gaskets and packing. While DeVries could only
specifically recall one Warren pump being repacked in his
presence, the evidence shows that DeVries oversaw work regularly
on the Turner's pumps and he testified that, while he did not
recall other specific instances, he was present for so many pump
repackings that he must have worked on the Warren pumps along

3

with the other pumps on the vessel. The Court concludes that, under these particular circumstances, and viewing the facts in the light most favorable to Plaintiff, there is a genuine dispute as to material facts regarding DeVries' level of exposure to potentially asbestos-containing parts within Warren pumps. Likewise, the Court concludes that under these circumstances, whether that exposure was a substantial factor in causing DeVries' injury is a fact question for the jury.

Second, Warren argues that, under the DeVries bare metal test, it owed no duty to warn DeVries of the dangers of asbestos. Specifically, Warren claims that Plaintiff has failed to establish the first step of the test, that its pumps required asbestos, and the second step of the test, that Warren knew or had reason to know that its integrated product was likely to be dangerous. See DeVries, 139 S. Ct. at 995. The Court concludes that fact questions associated with these issues prevent summary judgment.

Regarding the first step of the bare metal test, the Supreme Court in DeVries provided examples of when a product requires an asbestos part including when: "(i) a manufacturer directs that the part be incorporated;" "(ii) a manufacturer itself makes the product with a part that the manufacturer knows will require replacement with a similar part;" "or (iii) a product would be useless without the part." 139 S. Ct. at 995-96 (citations omitted). Here, the Court concludes that there are genuine disputes as to the material fact of whether Warren sold its pumps with, inter alia, asbestos-containing gaskets and packing and knew they would be replaced with similar parts.

Regarding the second step of the bare metal test, whether Warren had reason to believe its pumps were dangerous, the Court concludes that while some of Plaintiff's evidence, including what other manufactures might have known, is irrelevant and other evidence is misleading in that it does not support the propositions for which it was offered, there is sufficient conflicting evidence about what Warren had reason to know regarding the dangers of asbestos packing and gaskets that summary judgment is inappropriate.

Third, Warren contends that it is protected by the government contractor defense. Government contractors, which Warren alleges it is, are immune from tort claims when: "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the

**AND IT IS SO ORDERED.**

*Eduardo C. Robreno*

**EDUARDO C. ROBRENO, J.**

---

supplier warned the United States about the dangers in the use
of the equipment that were known to the supplier but not to the
United States." <u>Boyle v. United Techs. Corp.</u>, 487 U.S. 500, 512
(1988). In the past, the Court has concluded that this inquiry
is fraught with factual issues preventing summary judgment. <u>See,
e.g.</u>, <u>Willis v. BW IP Int'l Inc.</u>, 811 F. Supp. 2d 1146 (E.D. Pa.
2011). Under these specific circumstances, and given the
evidence presented in this case, the Court so finds again.
Therefore, the Court will deny Warren's motion for summary
judgment.



**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: ASBESTOS PRODUCTS | : | Consolidated Under |
| LIABILITY LITIGATION (No. VI) | : | MDL DOCKET NO. 875 |
| | : | |
| JOHN B. DEVRIES, ET AL. | : | E.D. PA CIVIL ACTION NO. |
| | : | 13-00474-ER |
| v. | : | |
| | : | |
| GENERAL ELECTRIC COMPANY, | : | |
| ET AL. | : | |
| | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                                     JULY 7, 2021

Presently before the Court are the motions for summary
judgment filed by Defendants General Electric Company ("GE") and
CBS Corporation ("CBS") regarding Plaintiffs' claims arising out
of John DeVries' alleged occupational asbestos exposure. For the
following reasons, the Court will grant the motions.

I.    **BACKGROUND**

Plaintiffs contend that DeVries was exposed to
asbestos while in the United States Navy between 1957 and 1960
while serving on the U.S.S. Turner, a Gearing class destroyer.
GE and CBS manufactured several of the steam turbines aboard the
Turner. Plaintiffs claim that DeVries was exposed to asbestos
dust from insulation attached to the turbines which led to his

asbestos-related injury. Plaintiffs further allege that GE and CBS failed to warn DeVries about the danger of asbestos.

GE and CBS delivered the turbines to the shipyard "bare metal," meaning without insulation. The insulation was installed later by naval contractors at the shipyard.

This Court previously granted summary judgment in favor of GE and CBS after finding that they were not liable in light of the "bare metal defense," holding that a manufacturer was not liable for injuries caused by asbestos parts not supplied by that manufacturer. Plaintiffs appealed and, ultimately, the Supreme Court remanded the case after announcing a new test for the bare metal defense under maritime law. See Air & Liquid Sys. Corp. v. DeVries, 139 S. Ct. 986 (2019). GE and CBS have now filed renewed motions for summary judgment, re-asserting, inter alia, the bare metal defense under the newly formulated test by the Supreme Court.

## II.  LEGAL STANDARDS

As this Court has previously held, and as recognized by the Supreme Court in Devries, 139 S. Ct. at 993, maritime law applies to this action because both the locality and connection tests are met given that DeVries' alleged exposure occurred during his service aboard a Navy vessel. See Conner v. Alfa Laval, Inc., 799 F. Supp. 2d 455, 463-469 (E.D. Pa. 2011).

2

In <u>DeVries</u>, the Supreme Court announced a new "tightly cabined" maritime bare metal test, holding that:

> In the maritime tort context, a product manufacturer has a duty to warn when (i) its product requires incorporation of a part, (ii) the manufacturer knows or has reason to know that the integrated product is likely to be dangerous for its intended uses, and (iii) the manufacturer has no reason to believe that the product's users will realize that danger.

139 S. Ct. at 995.

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 242 (1986); <u>see</u> <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007). The mere existence of some disputed facts will not overcome a motion for summary judgment. <u>Am. Eagle Outfitters v. Lyle & Scott Ltd.</u>, 584 F.3d 575, 581 (3d Cir. 2009) (quoting <u>Anderson</u>, 477 U.S. at 247-48). In undertaking this analysis, the Court must view all facts in the light most favorable to the non-moving party. <u>Scott</u>, 550 U.S. at 380.

While the moving party bears the initial burden of showing the absence of a genuine dispute of material fact, meeting this obligation shifts the burden to the non-moving

3

party who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250.

## III. DISCUSSION

GE and CBS argue, inter alia, that Plaintiffs' claims fail the Supreme Court's newly formulated bare metal test. The Court agrees and concludes that Plaintiffs have failed to show that the turbines manufactured by GE and CBS and supplied to the Turner required the incorporation of asbestos insulation.[1] Because Plaintiffs cannot meet the first prong of the bare metal test, summary judgment in favor of GE and CBS is warranted.[2]

---

[1] Plaintiff cites Sebright v. Gen. Elec. Co., No. CV 19-10593-WGY, 2021 WL 927664 (D. Mass. Mar. 11, 2021), for the proposition that this Court need determine only that the turbines required insulation, not that they required asbestos insulation. 2021 WL 927664, at *14. The Court disagrees with this conclusion and does not adopt it. The purpose of the first prong of the bare metal test is for the Plaintiff to show that the "product requires incorporation of a part" which makes "the integrated product . . . dangerous for its intended uses." DeVries, 139 S. Ct. at 995. It is the fact that the part contributes to the overall danger of the product that is the key to this prong, not just that the product requires a certain non-dangerous part.

[2] Because the Court has determined that Plaintiffs failed to meet the first prong of the bare metal test, the Court cannot discuss without rendering an advisory opinion whether, had Plaintiffs been able to show that the turbines required asbestos insulation, GE and CBS had reason to believe these hypothetical turbines were dangerous and whether they had no reason to believe the turbines' users would realize that danger. Thus, the Court's bare metal analysis starts and ends with the first prong.

In <u>DeVries</u>, the Supreme Court clarified the "requires" prong of the bare metal test, explaining that "the product [(the turbine)] in effect requires the part [(the asbestos containing insulation)] in order for the integrated product to function as intended" "when: (i) a manufacturer directs that the part be incorporated;" "(ii) a manufacturer itself makes the product with a part that the manufacturer knows will require replacement with a similar part;" "or (iii) a product would be useless without the part." 139 S. Ct. at 995-96.

The Court will address each of these three methods of proof in showing the products, the turbines in this case, did not require asbestos insulation that made them dangerous.

A.  **Plaintiffs have failed to show that GE and CBS directed that asbestos insulation be incorporated into the turbines**

After the parties addressed this issue in their summary judgment briefs, the Court ordered Plaintiffs to submit further briefing and to cite to specific portions of the record establishing that GE and CBS specified or directed the incorporation of asbestos insulation with the type of naval turbines used on the Turner. After reviewing the parties' original and supplemental briefing on the issue, the Court concludes that Plaintiffs have produced insufficient evidence

that GE or CBS directed or specified the incorporation of
asbestos insulation with the turbines at issue.

To support their claims, Plaintiffs produced evidence
that some land-based turbines were manufactured by GE and CBS
with asbestos insulation and that, in some cases, GE and CBS may
have chosen or specified that insulation. This evidence includes
news articles and letters, deposition testimony, discovery
answers, and various pages of insulation specifications and
instructions. However, there is no evidence that any of the
rules regarding land-based turbines were used for the maritime
turbines at issue, and, in fact, the evidence shows that they
were not.

Plaintiffs did produce partial documents regarding two
Navy Essex class aircraft carriers which included insulation
attachment drawings created by CBS. However, Plaintiffs were
unable to produce similar drawings for the Turner, and, instead,
the evidence tends to show that such drawings do not exist and
were not used for the Turner. Similarly, Plaintiffs produced
deposition testimony from other cases regarding asbestos used in
connection with GE turbines on specific commercial cargo ships.
Like the evidence regarding aircraft carriers, this evidence is
not relevant to determining whether GE or CBS directed the
incorporation of asbestos insulation with their turbines for the
Turner, or even Gearing class destroyers in general.

6

Plaintiffs also speculate that the Navy merely "rubber stamped" the Defendants' directions to use asbestos insulation when the Navy created its insulation specifications and installed insulation on the turbines. However, speculation cannot create an issue of fact. Halsey v. Pfeiffer, 750 F.3d 273, 287 (3d Cir. 2014) ("[A]n inference based upon a speculation or conjecture does not create a material factual dispute sufficient to defeat summary judgment." (quoting Robertson v. Allied Signal, Inc., 914 F.2d 360, 382 n. 12 (3d Cir. 1990))). Instead, the evidence, including testimony from Plaintiffs' expert, indicates that the turbine insulation plans for the Turner were created for the Navy by its architect, Gibbs & Cox.

Plaintiffs make forceful but unsupported claims that the evidence they produced is relevant to the type of marine turbines at issue, and that the evidence shows GE and CBS directed the incorporation of asbestos insulation with those turbines. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott, 550 U.S. at 380. Here, Plaintiffs produced no relevant evidence that GE and CBS specified or

7

directed the incorporation of asbestos insulation with the type
of naval turbines used on the Turner.

**B.  Plaintiffs have failed to show that GE and CBS made
     the turbines with asbestos insulation attached**

There is no serious dispute that GE and CBS sold and
delivered the marine turbines at issue without any insulation.
Plaintiffs provide evidence that the two Defendants produced and
sold some land-based commercial turbines with asbestos
insulation attached, but other evidence establishes that this
was not the case with these marine turbines. Therefore, GE and
CBS did not "make[] the product with a part that [they knew
would] require replacement with a similar part. DeVries, 139 S.
Ct. at 995.

**C.  Plaintiffs have failed to show that the turbines would
     be useless without asbestos insulation**

Both parties admit that non-asbestos but functionally
equivalent insulation types were available, known to, and
approved for use by the Navy that would have allowed the
turbines to function properly. For example, the parties
acknowledge that the Navy could have used aluminum foil-based
insulation or rock wool on the turbines. Therefore, the turbines
"would [not] be useless without the" asbestos insulation. Id. at
996.

8

The parties debate whether the turbines could function optimally without any insulation, but as stated supra in footnote one, the true issue is whether the turbines could function without the asbestos insulation, which both parties acknowledge is the case.

## IV.  CONCLUSION

In that Plaintiffs have failed to meet the first prong of the bare metal test, that the turbines at issue required the incorporation of asbestos insulation, GE and CBS are entitled to summary judgment.

An appropriate order follows.

EXHIBIT F

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **SUSAN M. ROGERS, Administratrix of the Estate of WILLIAM R. ROGERS III, deceased, and in her own right**<br><br>**Plaintiff,**<br><br>v.<br><br>**A.O. SMITH CORPORATION, et al.,**<br><br>**Defendants.** | **CIVIL ACTION<br>NO. 19-573** |

## MEMORANDUM

**SCHMEHL, J. /s/ JLS**                                 **MAY 10, 2022**

This asbestos injury case was originally brought by Plaintiffs William R.

Rogers, III ("Rogers") and Susan M. Rogers in the Court of Common Pleas of

Philadelphia County, then removed by Defendant Huntington Ingalls Industries to

this Court on the basis of federal officer removal jurisdiction. See 28 U.S.C. §

1442(a)(1).  The case was added to the consolidated asbestos products liability

multidistrict litigation (MDL-875) where it was made part of that Court's maritime

docket ("MARDOC") for pretrial management. The Plaintiffs subsequently filed an

amended complaint naming 65 product manufacturers as Defendants. Following

the death of Rogers on August 23, 2019, Susan Rogers, Administratrix of the

Estate of William Rogers, was substituted as Plaintiff.

Plaintiff alleges that Rogers developed mesothelioma as a result of

exposure to asbestos-containing products during the course of his employment

with the U.S. Navy while serving on the U.S.S. Forrestal (the "Forrestal"), an aircraft carrier commissioned in October,1955.   Plaintiff contends that Rogers was injured due to exposure to asbestos-containing products that the Defendants manufactured, sold, distributed, or installed. Accordingly, Plaintiff asserts claims for negligence, strict liability, punitive damages and loss of consortium.

Following completion of pretrial procedures, Plaintiff filed a Notice of Dismissal as to 46 of the Defendants [ECF 270]. Many of the remaining Defendants filed motions for summary judgment. The MDL Court granted four of these motions as unopposed [ECF 309]. As a result, six summary judgment motions remained pending. These motions were filed by Defendants CBS Corporation/Westinghouse[1], Copes Vulcan, Inc./Electrolux Home Products[2], Aurora Pump Company, General Electric Company, Carrier Corporation and Crane Co. On December 28, 2020, the case was randomly reassigned to the undersigned for "resolution of all remaining dispositive issues." [ECF 311.] The Court will now address the six pending motions for summary judgment.

### STANDARD OF REVIEW

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence

---

[1] CBS Corporation (a Delaware corporation f/k/a Viacom, Inc.), now known as ViacomCBS Inc., is a successor by merger to CBS Corporation (a Pennsylvania corporation f/k/a Westinghouse Electric Corporation).
[2] Electrolux Home Products is the successor to Copes Vulcan, Inc.

2

might affect the outcome of the litigation, and a dispute is "genuine" if "the
evidence is such that a reasonable jury could return a verdict for the nonmoving
party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 242 (1986); see *Scott v.
Harris*, 550 U.S. 372, 380 (2007). The mere existence of some disputed facts will
not overcome a motion for summary judgment. *Am. Eagle Outfitters v. Lyle &
Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009) (quoting *Anderson*, 477 U.S. at 247-
48). In undertaking this analysis, the Court must view all facts in the light most
favorable to the non-moving party. *Scott*, 550 U.S. at 380.

   While the moving party bears the initial burden of showing the absence of
a genuine dispute of material fact, meeting this obligation shifts the burden to the
non-moving party who must "set forth specific facts showing that there is a
genuine issue for trial." *Anderson*, 477 U.S. at 250.

## **GENERAL FACTS**

   Unfortunately, Rogers passed away before he could be deposed. As a
result, Plaintiff relies on the depositions of three of Rogers' former shipmates,
Myron Chicota ("Chicota"), James Schwanger ("Schwanger") and Mario Esposito
("Esposito"), to support her claim that Rogers was exposed to the Defendants'
asbestos-containing products while aboard the Forrestal.

   Rogers served on board the Forrestal from May 9, 1967 through April 16,
1970 as a B Division Boilerman/Boiler Technician. ECF 293-19 at 17, 23.
Chicota, testified that he was a B Division yeoman on the Forrestal from 1966-
1968. Chicota Dep., ECF 293-1 at 19. As a yeoman, Chicota's main job was to
enter the four main engine rooms and two auxiliary rooms on a daily basis to

make sure that preventive maintenance was being performed on the all the machinery in those rooms. *Id*. at 22-24. Chicota also testified that he was responsible for ordering parts for the machinery in the engine rooms, including gaskets, pumps, steam traps, circulating pumps and valves. *Id*. at 25.

Chicota testified that approximately "once a day" he observed Rogers working in Engine Room 1. *Id*. at 42. According to Chicota, Rogers' main job was to "maintain, clean and keep operational all of the equipment based on whether they broke down or if it was preventive maintenance." *Id*. at 51. Chicota testified that Rogers removed and replaced the packing and gaskets on valves. *Id*. at 53-56. According to Chicota, the process of removing and replacing the packing and gaskets gave off dust. *Id*. at 56.

Following a fire on the Forrestal on July 29, 1967, the ship was sent to drydock in Norfolk, Virginia for approximately six months. *Id*. at 92. While in drydock, the Forrestal underwent major repairs, including the reconditioning of the four engine rooms and the two auxiliary rooms. *Id.* at 92. Chicota testified that while the ship was in drydock, Rogers "work[ed] on the valves, the steam traps, flow regulators…pumps, compressors…" *Id.* at 93. This work included taking apart valves and removing the packing and gaskets and then repacking the valves and assisting in reinstalling them. *Id.* Chicota testified that he was directed by the senior master chief to order asbestos packing or asbestos gaskets "almost like every other day." *Id.* at 64-65.

4

## DISCUSSION

As the MDL Court has previously held, and as recently recognized by the Supreme Court in *Air & Liquid Sys. Corp. v. DeVries*, 139 S. Ct. 986, 993 (2019), maritime law applies to this action because both the locality and connection tests are met given that Rogers' alleged exposure occurred during his service aboard a Navy vessel. *See Conner v. Alfa Laval, Inc.*, 799 F. Supp. 2d 455, 463-469 (E.D. Pa. 2011).

To prevail on her negligence and strict liability claims under maritime law, Plaintiff must demonstrate that Rogers' injuries were caused by exposure to asbestos that was attributable to each defendant's conduct. *Lindstrom v. A-C Prod. Liab. Tr.*, 424 F.3d 488, 492 (6th Cir. 2005), *abrogated on other grounds by DeVries*, 139 S.Ct. 986.

In order to establish causation for an asbestos claim under maritime law, a plaintiff must show, for each defendant, that "(1) he was exposed to the defendant's product, and (2) the product was a substantial factor in causing the injury he suffered." *Lindstrom,* 424 F.3d at 492 citing *Stark v. Armstrong World Indus., Inc.,* 21 F. App'x 371, 375 (6th Cir. 2001). The MDL Court has also noted that, in light of its holding in *Conner,* there is also a requirement (implicit in the test set forth in *Lindstrom* and *Stark* ) that a plaintiff show that (3) the defendant manufactured or distributed the asbestos-containing product to which exposure is alleged. *Abbay v. Armstrong Int'l., Inc.,* No. 10–83248, 2012 WL 975837, at *1 n.1 (E.D.Pa. Feb. 29, 2012)(Robreno, J.).

Substantial factor causation is determined with respect to each defendant separately. *Stark,* 21 F. App'x. at 375. In establishing causation, a plaintiff may rely upon direct evidence (such as testimony of the plaintiff or decedent who experienced the exposure, co-worker testimony, or eye-witness testimony) or circumstantial evidence that will support an inference that there was exposure to the defendant's product for some length of time. *Id.* at 376 (quoting *Harbour v. Armstrong World Indus., Inc.,* No. 90–1414, 1991 WL 65201, at 4 (6th Cir. April 25, 1991)).

A mere "minimal exposure" to a defendant's product is insufficient to establish causation. *Lindstrom,* 424 F.3d at 492. "Likewise, a mere showing that defendant's product was present somewhere at plaintiff's place of work is insufficient." *Id.* Rather, the plaintiff must show "'a high enough level of exposure that an inference that the asbestos was a substantial factor in the injury is more than conjectural.'" *Id.* (quoting *Harbour,* 1991 WL 65201, at *4). The exposure must have been "actual" or "real", but the question of "substantiality" is one of degree normally best left to the fact-finder. *Redland Soccer Club, Inc. v. Dep't of Army of U.S.,* 55 F.3d 827, 851 (3d Cir.1995). "Total failure to show that the defect caused or contributed to the accident will foreclose as a matter of law a finding of strict products liability." *Stark,* 21 F. App'x at 376 (citing *Matthews v. Hyster Co., Inc.,* 854 F.2d 1166, 1168 (9th Cir.1988)(citing Restatement (Second) of Torts, § 402A (1965))).

Each of the moving Defendants argue that Plaintiff has failed to produce enough admissible evidence from which a jury could reasonably conclude that

6

Rogers was exposed to asbestos from their products and, even if Plaintiff was able to prove that Rogers was so exposed, she cannot prove that such exposure was a substantial contributing factor in Rogers' illness and death  In addition, should the court decide that causation has been established, some of the Defendants rely upon the "bare metal" defense to avoid liability on the basis that they have no duty to Plaintiff relating to asbestos-containing replacement parts they did not manufacture or distribute.

### Carrier, Inc.

Carrier, Inc. disputes that it manufactured any asbestos-containing products for the Forrestal.

None of the three product identification witnesses Plaintiff produced testified that Rogers worked with Carrier equipment on the Forrestal. Although Chicota testified that there were Carrier air conditioning units present in Engine Room 1, as well as in the auxiliary rooms where Rogers sometimes worked, see Chicota Dep. at 207, 212, 216, he did not testify that he observed Rogers actually work on these air conditioning units or on any of their internal components. Rather, Chicota testified that Rogers worked on the external pumps, pipe laggings, gaskets and valves with packing that were attached to or near the Carrier air conditioning units in Engine Room 1. *Id.* at 198, 200, 201, 214. Chicota also could not recall any manufacturer names on the specific pumps on which Rogers worked in Engine Room 1. *Id.* at 213. Chicota also could not recall how many times he saw Rogers working on pumps associated with air conditioning units in the engine room. *Id.* at 214, 217. Although Chicota testified

that there were Carrier pumps on the Forrestal, he testified that they were primarily in the auxiliary rooms where, according to Chicota, Rogers only occasionally worked. *Id.* at 20.

Even assuming that there were Carrier air conditioning units in Engine Room 1, Plaintiff has not produced any evidence that any of these units contained asbestos parts. Although Chicota testified that he ordered gaskets or packing for the pumps associated with the Carrier air conditioning units, he also testified that he did not order any asbestos-containing gaskets for the Carrier units. *Id.* at 213-214.

While Plaintiff refers to answers to interrogatories by Carrier (ECF 297-3) and deposition testimony from a corporate representative of Carrier (ECF 297-4) in other cases which show that some compressors made by Carrier contained asbestos-containing gaskets, a jury would be left to speculate whether any Carrier compressors on the Forrestal were fitted with asbestos-containing gaskets.

Finally, Plaintiff's own naval expert, Arthur W. Faherty ("Faherty"), testified that his expert report did not contain any reference to any Carrier equipment on the Forrestal and that he did not have any opinions specific to Carrier that would relate to Rogers. [ECF 288-2 at 139-141.]

Therefore, there is no evidence in the record from which a reasonable jury could conclude that Rogers worked on Carrier compressors or any of their internal parts or that any of the external, pumps, gaskets or valves attached to

the Carrier units that Chicota testified Rogers worked on in Engine Room 1 were actually manufactured by Carrier or contained asbestos.

Plaintiff's reliance on *Brown v. Kaiser Gypsum Co., Inc.*, 2011 WL 6445091 (E.D. Pa. December 12, 2011) is misplaced. In that case, the Plaintiff himself testified that he had to personally remove and replace gaskets that were part of the Carrier air conditioning unit "20 [to] 30 times" and that the replacement gaskets he used on Carrier compressors themselves were Carrier brand. It was this testimony in combination with other evidence that Carrier products contained asbestos, that lead Judge Robreno to deny Carrier's motion for summary judgment.

Here, by contrast, there is no testimony from a single witness that Rogers worked with any Carrier product that contained asbestos. Accordingly, Defendant Carrier is entitled to summary judgment.

**Copes Vulcan, Inc.**

A former corporate representative for Copes Vulcan, Royce Billings ("Billings"), averred in an unrefuted affidavit that "Copes Vulcan never marketed, manufactured, distributed, supplied or sold any type of steam trap." [ECF 292 at 5.]

On the other hand, Chicota testified that he believed there were over 1000 Copes Vulcan steam traps in Engine Room 1 on the Forrestal. Chicota Dep. at 61. He testified that he recalled these steam traps were a light color blue and had the name "Copes Vulcan" written on them. *Id* at 350. Although Chicota testified that he had a recollection of Rogers performing "normal maintenance" on a

Copes Vulcan steam trap, he could not recall on how many occasions. *Id*. at 351.

He recalled that boiler tenders in general would work on steam traps on a daily

basis. *Id*. at 351-352. He testified that steam traps generally contained gaskets

and packing and that he witnessed Rogers repairing gaskets on steam traps. *Id.*

at 61. However, Chicota also named four other manufacturers of steam traps that

were used in Engine Room 1 on the Forrestal, *id*. at 61-62 and testified that he

did not know how many of each manufacturer's steam traps were in Engine

Room 1 because he "couldn't distinguish them." *Id.* at 62. He also testified that

Rogers worked on steam traps involved in operating turbines but did not specify

the maker of those steam traps. *Id*. at 79.

Although Chicota identified Copes Vulcan steam traps as being present in

Engine Room 1 and testified that Rogers performed normal maintenance on

Copes Vulcan steam traps, Plaintiff has failed to establish that any steam traps

manufactured by Copes Vulcan contained asbestos. Without evidence that there

were **asbestos-containing** steam traps manufactured by Copes Vulcan in

Engine Room 1, there is no triable issue of fact with respect to Copes Vulcan

steam traps.[3]

Chicota also testified that he had a recollection of Rogers performing

general maintenance on Copes Vulcan gate valves. *Id*. at 352-53. He testified

that these gate valves were also light blue and had the name "Copes Vulcan"

written on them. *Id*. Chicota was unable to recall the number of occasions Rogers

---

[3] The Court also notes that Plaintiff's naval expert, Faherty, admitted that his expert
report contained no specific opinions as to Copes Vulcan equipment. ECF. 281, Ex. D, p.144.

performed maintenance work on the Copes Vulcan valves. *Id*. at 352. He also
could not recall which systems the Copes Vulcan were used on. *Id*. at 352-353.
Chicota also testified that the packing and gaskets on valves needed to be
replaced on a regular basis, *id* at 52, and that he observed Rogers "remove the
bonnet on valves, remove the securing bolt, remove the packing and install new
packing and reassemble the valve." *Id*. at 52-53. Chicota testified that removing
the packing gave off dust. *Id*. at 56. Chicota also identified Exhibit p-31 as a
Copes Vulcan pneumatically controlled automatic valve and as one of the valves
Rogers worked on. *Id*. at 103-104.

Although Chicota testified that he ordered replacement parts from Copes
Vulcan, including thousands of gaskets as well as valves and packing, *id*. at 25
26, 37, he could not recall the number of occasions Rogers used the gaskets and
packing. *Id*. at 358-59. Chicota testified that he assumed that the gaskets and
packing that were removed from a Copes Vulcan steam trap or valve were "made
by Copes or a direct Copes supplier for that particular piece. As required by the
Navy, the parts, the packing and the gaskets, had to be supplied by the
manufacturer." *Id*. at 358. Chicota testified that any Copes Vulcan steam valves
were covered with asbestos covering and insulation. *Id*. at 366. He further
admitted that as part of the repair of the Copes Vulcan valves it was "necessary
to remove the asbestos, fix the valve, and then put the asbestos back." *Id*.

In its answers to interrogatories in another case, Copes Vulcan stated that
it incorporated asbestos-containing gaskets and packing in certain of its products
until 1986. ECF 293, Ex. I. In a separate action, corporate representative Billings

11

testified that all valves that Copes Vulcan manufactured from 1974 to 1981 contained an asbestos component part, asbestos packing or gaskets. ECF 293, Ex. K at 37.

Viewing the evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff has presented evidence that Rogers worked with Copes Vulcan valves on the Forrestal and that Rogers replaced gaskets and packing on these valves on a regular basis. Copes Vulcan admits that many of its gaskets and packing contained asbestos. Therefore, the Court finds that a reasonable jury could find that Rogers was exposed to potentially asbestos-containing Copes Vulcan valves while working on the Forrestal.

The Court also concludes that, under these circumstances, whether that exposure was a substantial factor in causing Rogers' injury is a fact question for the jury. *See Redland Soccer Club,* 55 F.3d at 851.

Copes Vulcan argues that it is also entitled to summary judgment based on the "sophisticated purchaser" defense. Under this defense, Copes Vulcan contends that it was the responsibility of intermediary purchasers of asbestos products such as the Navy to have warned Rogers about the dangers of asbestos. The MDL Court has explicitly ruled, however, that the "sophisticated purchaser" defense "is not available under maritime law in cases involving asbestos." *Mack v. General Electric Co.,* 896 F. Supp. 333, 343 (E.D. Pa. 2012). Therefore, the "sophisticated purchaser" defense is not available to Copes Vulcan.

**Aurora Pump Company**

With regard to Aurora Pump, Chicota testified that Aurora pumps "were all over" the Forrestal, including in Engine Room 1. *Id*. at 31. Chicota could not recall how many Aurora pumps were in Engine Room 1 or where they were located. *Id*. at 334. The only distinguishing feature Chicota could recall was that an Aurora pump had a silver body. *Id*. at 335. Chicota testified that he observed the men in Engine Room 1 replacing the gaskets on the flanges of Aurora pumps as well as the packing around the stem. *Id* at 32. This type of work created dust. *Id. at 33.* He further testified that he saw Rogers work on an Aurora pump in Engine Room 1. *Id*. at 339. Chicota testified that he could not recall how many times he saw Rogers work on an Aurora pump. *Id.* He also testified that he did not know how many times he witnessed Rogers remove or replace gaskets or packing on an Aurora pump as opposed to checking the bearings or lubricating the pumps. *Id*. at 340. Finally, he testified that he did not know whether Rogers removed any original components or parts from an Aurora pump. *Id*. at 341.

Chicota testified that he did not know what entity manufactured the gaskets or packing on any of the Aurora pumps. *Id.* He testified that he did not have any personal knowledge that Aurora required or specified the use of asbestos on its pumps. *Id*. at 344. Although Chicota testified that he ordered replacement gaskets and packing from Aurora, *id*. at 36, he subsequently testified that he could not recall what parts he ordered for an Aurora pump. *Id*. at 345. Although he testified that he saw Rogers install a part that he had directly ordered from Aurora, he could not identify the part. *Id*. at 346-347.

13

In its answers to interrogatories in another case, Aurora stated that it "manufactured pumps, some of which contained asbestos-containing gaskets and packing, and does not believe that the use of its finished products posed any health hazard." ECF 296, Ex. N at #22. It also stated that the gaskets and packing were purchased primarily from Garlock, Inc. and Crane Packing Company both of which used chrysotile asbestos. *Id.* at #21.

In a separate action, an Aurora representative, Jimmy Leroy Franklin, testified that pump manufacturers such as Aurora used packing made of asbestos because it was the most common packing material used in pumps. ECF 296, Ex. A. pp.78-80, 100. Franklin also testified that Aurora supplied replacement parts for packing gaskets, either directly or through distributors, to the Navy. *Id.* at 95-99, 114-116.

There is testimony that Aurora pumps were present in Engine Room 1 and that Rogers worked on these pumps. Since Rogers was present in Engine Room 1 on a daily basis, a jury could infer that he worked on Aurora pumps on a daily basis. While some of Rogers' work on the Aurora pumps may have been limited to checking the bearings or lubricating the pumps, there is testimony that Rogers also removed and replaced gaskets and packing on the pumps. There is also evidence that Aurora pumps were fitted with asbestos-containing gaskets and packing. Therefore, the Court finds that, viewing the evidence in the light most favorable to Plaintiff, a reasonable jury could find that Rogers was exposed to potentially asbestos-containing Aurora pumps while working in Engine Room 1.

The Court also concludes that, under these circumstances, whether that exposure was a substantial factor in causing Rogers' injury is a fact question for the jury. *See Redland Soccer Club,* 55 F.3d at 851.

In the alternative, Aurora Pump claims it is entitled to summary judgment based on the "bare metal" defense. In *DeVries*, the Supreme Court announced a new "tightly cabined" maritime bare metal test, holding that:

> In the maritime tort context, a product manufacturer has a duty to warn when (i) its product requires incorporation of a part, (ii) the manufacturer knows or has reason to know that the integrated product is likely to be dangerous for its intended uses, and (iii) the manufacturer has no reason to believe that the product's users will realize that danger.

139 S. Ct. at 995.

In *DeVries*, the Supreme Court clarified the "requires" prong of the bare metal test, explaining that "the product [(the turbine)] in effect requires the part [(the asbestos containing insulation)] in order for the integrated product to function as intended" "when: (i) a manufacturer directs that the part be incorporated;" "(ii) a manufacturer itself makes the product with a part that the manufacturer knows will require replacement with a similar part;" "or (iii) a product would be useless without the part." 139 S. Ct. at 995-96.

With regard to the first prong of the bare metal test, whether Aurora directed the incorporation of asbestos-containing parts in its pumps, the Court concludes that there are genuine disputes as to the material fact of whether Aurora sold its pumps with, *inter alia*, asbestos-containing gaskets and packing and knew they would be replaced with similar parts.

15

Regarding the second prong of the bare metal test, whether Aurora had reason to believe its pumps were dangerous, the Court concludes that there is sufficient conflicting evidence about what Aurora had reason to know regarding the dangers of asbestos packing and gaskets that summary judgment is inappropriate. Accordingly, Aurora is not entitled to summary judgment based on the bare metal defense.

**Crane Co.**

With regard to Crane Co., Navy inspection reports and work requests confirm that Crane valves were present on the Forrestal and that maintenance on these valves included removing the packing and gaskets. ECF 294-2. Chicota testified that he recalled seeing Rogers "in the vicinity" when work was performed on these Crane valves. *Id.* However, Chicota also admitted that he did not recall seeing any Crane valves on the Forrestal. *Id.* at 207. Chicota also admitted he never mentioned the presence of Crane valves on the Forrestal during a deposition in another case by a different plaintiff who served on the Forrestal in a nearly identical role as Rogers. *Id.* at 205.

Although there is conflicting evidence as to whether Crane valves were present on the Forrestal, there is no evidence that Crane valves were present in Engine Room 1. While Chicota testified that he observed Rogers working in the vicinity of Crane valves, Chicota contradicted himself by later testifying that he did not recall seeing any Crane valves on the Forrestal and by admitting that he never mentioned the presence of Crane valves on the Forrestal in another asbestos case involving a different plaintiff who served on the Forrestal in a

16

nearly identical role as Rogers. Therefore, there is no evidence from which a
reasonable jury could conclude that Rogers was exposed to potentially asbestos-
containing Crane valves on a regular basis. Therefore, Crane is entitled to
summary judgment.

### CBS/Westinghouse

With regard to CBS/Westinghouse, Westinghouse admits that the
Forrestal was outfitted with Westinghouse equipment, including the ship's
propulsion turbines, some of the ship's service turbine generators, some of the
equipment drive turbines and the ship's forced-draft blowers. ECF 278-1 at 1-2.
In another case, Westinghouse stated in its answers to interrogatories that
certain variations of the following products contained asbestos: condensers,
gaskets in equipment, generators, heat transfer products, pumps, reductor gears,
steam and gas turbines and ancillary insulation and valves. ECF 299-4.

Chicota testified that the engine and reduction gear on the Forrestal "were
Westinghouse." *Id*. at 68-69. According to Chicota, Rogers repaired the valves
leading to the main engine and the turbine. *Id*. at 69, 79, 89-90. Although he
could not recall the number of times he observed Rogers working on the valves
leading to a Westinghouse turbine, Chicota testified that these valves needed to
be maintained more frequently than other pieces of equipment. *Id*. at 69-70.
Chicota did not identify these valves as Westinghouse valves. He testified that he
could not verify whether Rogers on worked on the internal parts of Westinghouse
turbines because those in Rogers' position "do not work on turbines." *Id*. at 324.
Chicota testified that certain Westinghouse turbines were covered with asbestos

sheeting. *Id.* at 325. He testified that Rogers was "in the vicinity" when the asbestos on the Westinghouse turbine was disturbed. *Id.* at 326.

Chicota also testified that there were Westinghouse forced draft blowers in Engine Room 1. *Id.* at 74. According to Chicota, Rogers maintained the external valves and steam traps on the forced draft blowers. *Id.* at 75-77.

Schwanger testified that he never saw Rogers, while the Forrestal was out at sea, near the insulation of the main propulsion turbines or any of the drive turbines when the insulation was disturbed. ECF 278-3 at 142. Schwanger also testified that Rogers did not work with insulation on any forced draft blowers and Rogers was not near the forced draft blowers when they were being worked on. *Id.* at 135.

Schwanger testified that when the Forrestal was being overhauled at the Norfolk Naval Shipyard, he and Rogers during one shift helped remove the cap insulation from one of the nonoperative main propulsion turbines. *Id.* at 144, 158. Schwanger testified that he observed Rogers remove cap insulation from drive turbines and the main feed pump but he did not know how many times. *Id.* at 74, 160. Nor did he know the name of the manufacturer of the insulation. *Id.* Schwanger guessed that the insulation on the turbine or the pipes around the main feed pumps was not original but was replaced. *Id.* at 74-75.

Neither Chicota nor Schwanger testified that Rogers worked on the internal parts of any Westinghouse turbine or forced draft blower while the Forrestal was out at sea. At best, their testimony revealed that Rogers worked on valves and steam traps that were external to the Westinghouse turbines and

blowers. Neither Chicota nor Schwanger could identify the manufacturer of these valves and steam traps.

However, viewing the evidence in the light most favorable to Plaintiff, the Court finds that a reasonable jury could find, based on Schwanger's testimony, that Rogers was exposed to asbestos-containing insulation on Westinghouse main propulsion and drive turbines while the Forrestal was being overhauled at the Norfolk Naval Shipyard. The Court also concludes that, under these circumstances, whether that exposure was a substantial factor in causing Rogers' injury is a fact question for the jury.

Westinghouse argues that it is nevertheless entitled to summary judgment because Plaintiff has failed to satisfy the Supreme Court's newly formulated bare metal test in *DeVries*. The MDL Court has recently ruled in another maritime asbestos case involving alleged exposure to asbestos-containing insulation in turbines manufactured by Westinghouse for use on the U.S.S. Turner, a Gearing class destroyer, *In re Asbestos Products Liability Litigation*, 547 F.Supp.3d 491 (E.D. Pa. 2021), that Plaintiffs failed to satisfy the first prong of the tightly cabined bare metal test. Specifically, the Court found that Plaintiff did not satisfy any of the three methods of proof stated by the Supreme Court in *DeVries* for showing that the turbines manufactured by CBS and supplied to the U.S.S. Turner **required** the incorporation of asbestos insulation that made the turbines dangerous. *Id*. at 494-95.

For the same reasons stated by the MDL Court in *In re Asbestos Products Liability Litigation*, *supra*., the Court finds that Plaintiff cannot meet the first prong

of the bare metal test, i.e. that Westinghouse turbines **required** the incorporation of asbestos insulation.[4]

The Court will add that the evidence in this case reveals that the Navy's own specifications ("MilSpecs") required that all Naval turbines be delivered "bare metal" and not accompanied by any type of thermal insulation at the time of delivery. Affidavit of Rear Admiral John B. Padgett, III [U.S.N., Ret.], ECF 278-4 at ¶ 55. Further, the evidence reveals that the insulation used with Westinghouse's Navy equipment generally, or with the insulation used with Westinghouse's Navy equipment on the Forrestal specifically, was furnished by the Navy's shipbuilder, not by an equipment manufacturer such as Westinghouse. *Id.*; Faherty Dep. ECF 278-5 at 32, 33, 66-67. There is also no dispute that suitable non-asbestos insulation was available and had been approved for use on Navy ships. Padgett Aff., ¶¶ 51-52.

---

[4] Plaintiff argues that the Court should follow a recent decision from the United States District Court for the District of Massachusetts which concluded that in evaluating the first prong of *DeVries* test, the Court does not have to determine whether the turbines required asbestos insulation, but only that they required insulation in general. *See Sebright v. Gen. Elec. Co.,* 525 F.Supp. 3d 217 (D. Mass. 2021) The MDL Court has recently stated that it "disagrees with this conclusion and does not adopt it." *In re Asbestos Products Liability Litigation,* 2021 WL 2828524 at *2 n.1 (E.D. Pa. July 7, 2021). The MDL Court reasoned that "[t]he purpose of the first prong of the bare metal test is for the Plaintiff to show that the 'product requires incorporation of a part' which makes 'the integrated product ... dangerous for its intended uses.'" *Id. citing DeVries,* 139 S. Ct. at 995. The MDL Court further stated that "[I]t is the fact that the part contributes to the overall danger of the product that is the key to this prong, not just that the product requires a certain non-dangerous part." *Id.* This Court certainly agrees with the MDL's Court reasoning.

Plaintiff directs the Court's attention to certain insulation attachment drawings made by Westinghouse which she claims show that it was Westinghouse, not the Navy, that chose the type of insulation to be used with Westinghouse equipment on the Forrestal and that Westinghouse then subcontracted the installation of that insulation to the Navy's shipbuilder. ECF 299, pp. 6-7, 20; ECF 356, pp. 2-3, 5.

However, according to the unrefuted affidavit of Admiral Padgett, these drawings "simply reflects the equipment manufacturer's documentation of **the Navy's choice** of insulation materials **imposed by its MilSpecs** and the mandatory obligation imposed on the Navy's shipbuilder to follow those MilSpecs in the insulation of the supplier's Naval equipment." ECF 278-4, Padgett Aff. at ¶ 55 (emphasis added). In addition, Plaintiff's own naval expert testified that, while Westinghouse would have provided the Navy with certain raw data as to the expected surface temperatures of its equipment, it was the Navy or some other third party, not Westinghouse, that would have then used that information to formulate the insulation plan for that equipment based on the Navy's own insulation MilSpecs.  ECF 278-5, Faherty Dep., pp. 32-35.

Indeed, the MilSpecs confirm Padgett's averments and the Faherty testimony. The MilSpecs reveal that the only insulation-related responsibility of equipment manufacturers was to provide the insulation and lagging attachment devices (hooks, rails, bolts etc.) for the installation of the insulation (ECF 357-1, Mil-T-17600B, § 3.3.2.1(m). The insulation itself was the responsibility of the shipbuilder, not the manufacturer. (*Id.*, § 3.3.2.2(n)). More specifically, Mil-T-

17600B, § 3.4.8.1 clarified these two very different roles as to "thermal insulation
and lagging" as follows:

> Responsibility. – **The shipbuilder will be responsible
> for furnishing and installing thermal insulation and
> lagging on turbines when secured in ship.** The
> turbine manufacturer shall convey to the shipbuilder
> information as to the maximum temperatures
> contemplated in the design during required operation.
> **The shipbuilder will convey timely information to
> the turbine manufacturer as to the need for and
> recommended type of lagging attachments integral
> with turbine casing and chest.** The **shipbuilder** will
> forward **his turbine insulation drawing** to the turbine
> manufacturer for comment.

(*Id.*, Mil-T-17600B, § 3.4.8.1) (emphasis added).  In short, Plaintiff has failed to

show that the installation attachment drawings required Westinghouse to use

asbestos-containing insulation for its equipment on the Forrestal.

Plaintiff has failed to produce any relevant evidence that Westinghouse

directed or specified the incorporation of asbestos containing insulation with the

turbines at issue, that Westinghouse made the turbines with asbestos containing

insulation attached, and that the turbines would be useless without asbestos

containing insulation. *DeVries*, 139 S. Ct. at 995-96.

As a result, summary judgment in favor of CBS/Westinghouse is

warranted based on the "bare metal" defense as applied.

**General Electric**

With regard to General Electric, Chicota testified that there were General

Electric generators and steam-driven turbines ("SSTGs") on the Forrestal and

that the repairs on the generators were performed by either Rogers or people

who worked near him. *Id.* at 79-81, 316. Chicota testified that Rogers was

"present" when General Electric employees removed gaskets and packing from General Electric equipment. *Id.* at 98-99.

Although Chicota testified that Rogers also worked on forced draft blowers and that there were General Electric (in addition to Westinghouse) forced draft blowers on the Forrestal, i*d.* at 75-76, he later admitted that he did not know of any other General Electric equipment on the Forrestal other than the SSTGs. *Id.* at 315-316. Plaintiff's expert, Faherty, testified that none of the ship records from the Forrestal show that there was a General Electric forced draft blower on the Forrestal. ECF 287-3 at 184-185. Faherty also testified that there is no testimony, military or personnel records that show Rogers "working in an engine room or any machinery space with a [General Electric] SSTG." *Id.* at 188.

In another case, General Electric's corporate representative, David Skinner, testified General Electric shipped its marine turbines from the factory as "bare metal." ECF 298-8, at 88. Skinner further testified that the "normal practice" in the 1950s and 1960s was that General Electric would know and expect that its marine turbines would be insulated by the shipyard. *Id.* at 66-67. Skinner also testified that General Electric propulsion turbines manufactured through the 1960s contained "some asbestos gaskets." *Id.* at 93.

There is evidence that SSTGs manufactured by General Electric were on the Forrestal. However, Plaintiff has failed to produce sufficient evidence for a jury to conclude that he was exposed to an potentially **asbestos-containing** SSTG manufactured by General Electric at all, let alone to such an extent that

the exposure was a substantial factor in causing his injury *Lindstrom,* 424 F.3d at 492. Accordingly, General Electric is entitled to summary judgment.

Even if Plaintiff had produced adequate evidence on exposure, General Electric, like, Westinghouse, has asserted the bare metal defense. Again, for the same reasons stated by the MDL Court in *In re Asbestos Products Liability Litigation, supra.,* the Court finds that Plaintiff cannot meet the first prong of the bare metal test, i.e. that General Electric turbines ***required*** the incorporation of asbestos insulation.

Like with CBS/Westinghouse, the Court will add that the evidence in this case reveals that the Navy's own MilSpecs required that all Naval turbines be delivered "bare metal" and not accompanied by any type of thermal insulation at the time of delivery. Affidavit of Rear Admiral John B. Padgett, III [U.S.N., Ret.], ECF 278-4 at ¶ 55. Further the evidence reveals that the insulation used with General Electric equipment generally, or with the insulation used with General Electric's on the Forrestal specifically, was furnished by the Navy's shipbuilder, not by an equipment manufacturer such as General Electric. *Id.*; Faherty Dep. ECF 278-5 at 66-67; Affidavit of (Paul A. Banaszewski (ECF 287-6) (averring that "Navy turbines manufactured by [General Electric] left the factory and were shipped 'bare metal,' meaning that they had only a coat of paint on the exterior metal surface." *Id.* at ¶ 5. "The Navy required this bare metal shipment because its specifications mandated that its shipbuilders would later furnish and apply any specified heat insulation material after the turbines had been installed aboard ship and tested." *Id.* "There were no [General Electric] specifications for heat

insulation materials to be used with Navy turbines. That subject was exclusively governed by the Navy's Military Specifications." *Id.* at ¶ 8.)

Plaintiff has failed to show that General Electric directed that asbestos-containing insulation be incorporated into its turbines, that General Electric made the turbines with asbestos containing insulation attached, and that the turbines would be useless without asbestos insulation. *DeVries*, 139 S. Ct. at 995-96.

Accordingly, Plaintiff has not met the first prong of the *DeVries* test, i.e. that General Electric turbines **required** the incorporation of asbestos insulation. Accordingly, General Electric is entitled to summary judgment.

## PUNITIVE DAMAGES/LOSS OF CONSORTIUM

Finally, Plaintiff's claims for punitive damages and loss of consortium are dismissed. *See The Dutra Group v. Batterton*, 139 S.Ct. 2275, 2278 (2019) (reiterating that in a wrongful death claim under general maritime law, recovery is limited to pecuniary damages); (punitive damages cannot be recovered on claims in admiralty where there is no historical basis for allowing such damages); *Miles v. Apex Marine Corp.*, 498 U.S. 19, 36 (1990). (non-pecuniary damages in survival actions involving wrongful death of seaman, as opposed to non-seafarer, limited to those suffered during the decedent's lifetime because such damages are not permitted under the Jones Act.); *In re Asbestos Products Liability Lit.*, 2014 WL 3353044, at *11 (E.D. Pa. July 9, 2014) (holding that punitive damages may not be obtained in either a wrongful death or survival action under general maritime law);